[Cite as *Hurt v. Liberty Twp.*, 2017-Ohio-7820.]

wCOURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                                   |   |                                 |
|-----------------------------------|---|---------------------------------|
|                                   |   | JUDGES:                         |
| JAMES HURT, ET AL                 | : | Hon. Patricia A. Delaney, P.J.  |
|                                   | : | Hon. W. Scott Gwin, J.          |
| Plaintiffs-Appellees              | : | Hon. John W. Wise, J.           |
|                                   | : |                                 |
| -vs-                              | : |                                 |
|                                   | : | Case No. 17 CAI 05 0031         |
| LIBERTY TOWNSHIP, DELAWARE        | : |                                 |
| COUNTY, OHIO                      | : |                                 |
|                                   | : | O P I N I O N                   |
| Defendant-Appellant               |   |                                 |

CHARACTER OF PROCEEDING:        Civil appeal from the Ohio Court of Claims,
                                Case No. 2016-00856-PQ


JUDGMENT:                       Affirmed


DATE OF JUDGMENT ENTRY:         September 22, 2017

APPEARANCES:

For Plaintiffs-Appellees                For Defendant-Appellant

JAMES HURT                              STEPHANIE SCHOOLCRAFT
2081 Bunty Station Road                 DAVID A. RIEPENHOFF
Delaware, OH 43015                      400 South Fifth Street, Suite 200
                                        Columbus, OH 43215-5095
MARK GERGER
5212 Sheffield Avenue
Powell, OH 43065

*Gwin, J.*

**{¶1}** Respondent-appellant Liberty Township, Delaware County, Ohio ["Liberty Township"] appeals from the March 29, 2017 final order and entry of the Ohio Court of Claims adopting the Special Master's Report and Recommendation that granted the public record request of Requestor-appellees James Hurt ["Hurt"] and Mark Gerber ["Gerber][1].

*Facts and Procedural History*

**{¶2}** This action is based on public records requests for interview notes taken by a private person statutorily designated to carry out an official function, the investigation and preparation of charges for removal of a township fire chief.

**{¶3}** On March 21, 2016, the Board of Trustees ("Board") of Liberty Township passed Resolution #16-0321-11, "to designate Douglas Duckett ["Duckett"] to investigate the conduct of Fire Chief Tim Jensen and prepare the necessary charges pursuant to Section 505.38 of the Ohio Revised Code * "."

**{¶4}** R.C. 505.38 defines a process that is preliminary to the removal of an employee of the fire department or the fire chief. Pursuant to R.C. 505.38(A), an employee or a fire chief continues in office until removed from that office. In order to be removed from that office, the appointing authority must follow the removal proceedings contained in R.C. 733.35 to 733.39. Consistent with R.C. 505.38(A), a board of township trustees may institute removal proceedings of the employee or fire chief when it has

---

[1] Ohio Public Employer Labor Relations Association, The Ohio Township Association and the Coalition of Large Ohio Urban Townships have filed Amicus briefs on Liberty Township's behalf. Ohio Collation for Open Government has filed an amicus brief on behalf of the Requestor-appellees for Open Government.

reason to believe the employee or fire chief is guilty of, "... bribery, misfeasance, malfeasance, nonfeasance, misconduct in office, gross neglect of duty, gross immorality, or habitual drunkenness..." in the performance of the fire chief's official duties. R.C. 733.35.

{¶5} The board may designate a private citizen or the fire chief to investigate any alleged misconduct by the employee or the fire chief. The fire chief or the private citizen acting as the investigator may prepare any necessary charges in accordance with R.C. 733.35 to 733.39. R.C. 505.38(A). The investigator will prepare charges if the investigation concludes the employee or the fire chief has violated general or specific standards of conduct. R.C. 733.35. The charges written by the investigator must include detailed statements of alleged guilt, and those charges are then filed with the board and served upon the employee or the fire chief. Id. Once the charges are filed, the charges must be heard at the next regular meeting of the Board unless the employee or fire chief seeks an extension of time. R.C. 733.36. The Board of Trustees acts as a quasi-judicial authority during the hearing.

{¶6} As part of Duckett's investigation, Duckett created and maintained notes related to sixteen interviews of Township trustees, Township employees, and others (defined in the Complaint at ¶ 5, 6 and 8 as the "Duckett notes").[2]

---

[2] The Log of Project Work in Duckett's Invoice to Liberty Township, Requesters' Exhibit B, reflects interviews conducted on March 24, 2016 with "Cathy Buehrer, Trustee Eichhorn, FF Chalaco Clark, and BC Bill Piwtorek," on March 25, 2016 with "BC Jim Reardon, FE Scott Simmons, Trustee Leneghan,and BC Duane Price," on March 29, 2016 with "Cathy Buehrer," on March 30, 2016 with "Trustee Thomas Mitchell and Township Administrator Matt Huffman," on April 5, 2016 with "Ryan Hanf, Mickey Smith, Jim Cirigliano, and Warren Yamarick, M.D.," on April 22, 2016 with "former Fiscal Officer Mark Gerber and Fire Chief Tim Jensen," and on April 25, 2016 with "Fire Chief Jensen."

{¶7}   Duckett submitted the final copy of his report to Attorney Kim on May 10, 2016.  The Board then directed Duckett to prepare charges against Jensen, which he filed on June 6, 2016.  (Trustee Eichhorn Affidavit at 5-6).

{¶8}   A three-day administrative hearing was scheduled for the Board to hear the charges against Jensen, beginning August 8, 2016.  (Trustee Eichhorn Affidavit, ¶ 7).  Prior to the administrative hearing before the Board, Jensen's counsel filed a subpoena for the "notes Mr. Duckett took during the interviews of witnesses during his investigation."  (Trustee Eichhorn Affidavit, ¶ 7-8).  Duckett objected to the production of the notes.  (Id. at ¶ 8-9; Trustee Leneghan Affidavit, ¶ 8-9; Trustee Mitchell Affidavit, ¶ 8-19).

{¶9}   At the beginning of the hearing on August 8, the Board of Trustees heard arguments regarding whether or not it should grant attorney Bittner's subpoena.  (Trustee Eichhorn Affidavit, ¶ 10; Trustee Leneghan Affidavit, ¶ 10; Trustee Mitchell Affidavit, ¶10).   After the Board of Trustees heard these arguments, as well as arguments in favor and in opposition of various procedural matters, the Board adjourned to executive session.  (Id.).

{¶10}  The Board considered the subpoena, "and announced it was granting Mr. Bittner's subpoena and requiring Mr. Duckett to produce the notes he took during witness interviews to Mr. Bittner."  (Trustee Eichhorn Affidavit, ¶10-11).   The individual trustees and the Township administrator assert in their affidavits that, other than the mechanical process of handing the subpoenaed notes to Jensen's counsel at the August 8, 2016 hearing, the Duckett notes were

never in their individual physical possession, and were not introduced into evidence at the hearing. (Id. at ¶12-15).

{¶11} During the third day of the hearing, August 10, 2016, the Board of Trustees, Bittner, and Jensen agreed to pursue mediation and the administrative hearing was stayed pending the outcome of mediation. (Trustee Eichhorn Affidavit, ¶ 19). The parties engaged in mediation on August 25, 2016, and came to a settlement agreement where the Board agreed to dismiss the charges against Jensen and Jensen agreed to become a Fire Prevention Officer for the Township. (Id. at ¶ 20). Because of the settlement, the Board did not make any findings or issue a decision based upon the evidence presented at the August 8-10, 2016 hearing, (Id. at ¶ 21).

{¶12} On May 5, 2016, Hurt made the first of his and Requester Gerber's public records requests to Township Administrator Matt Huffman for various items, including the Duckett notes. Over the next three months, Huffman provided some of the requested items, but responded that the interview notes were kept by Duckett as personal records and therefore did not meet the definition of "records."

{¶13} On September 2, 2016, Huffman sent an e-mail to Hurt relaying the Township legal counsel's advice that "[t]hose notes are not a public record since the Township does not have possession of those documents. The documents were never introduced as exhibits and are not in the record. They were given to Mr. Bittner as a result of a subpoena." (Requesters' Exhibit C). On October 12, 2016, Hurt and Gerber sent a joint e-mail to both Huffman and Duckett, repeating

their requests for the Duckett notes.  On October 13, 2016, Duckett sent an e-mail to Gerber that stated:

> You are incorrect as a matter of law that I am "holding public records on behalf of Liberty Township. . . ."
>
> Under the express terms of Section 149.43(A)(1) of the Ohio Revised Code, "Public record means records kept by any public office, including... township[s]. . . ."  I am not a "public office"; I am an attorney with a private law practice.  My records are thus not "public records."  This has nothing to do with attorney-client privilege; none of my records are public records by statutory definition.
>
> Accordingly, I am not providing any documents in response to your request.  You need to focus your request on the public office, i.e., Liberty Township.

(Requesters' Exhibit F).  On September 23, 2016, Township employee Cathy Buehrer provided Hurt with transcripts of the Duckett interviews of Jensen, and offered access to the audio recordings of those interviews.  (Requesters' Exhibit G).

{¶14} On November 21, 2016, Requesters filed a complaint against the Township under R.C. 2743.75 alleging denial of access to a public record in violation of R.C. 149.43(B), attaching copies of the original records requests and related correspondence.

**{¶15}** Consistent with the mandates included in R.C. 2743.75, the parties participated in mediation, which was unsuccessful. *Notice Referring Public Records Complaint to Mediation,* Ohio Court of Claims, Case No. 2016-00856-PQ (November 22, 2016); *Notice of Scheduled Mediation Conference*, Ohio Court of Claims, Case No. 2016-00856-PQ (January 3, 2017).

**{¶16}** Liberty Township filed a motion to dismiss Requestor's Complaint as well as a response to the Complaint. *Motion to Dismiss and Response to Complainants ORC 2743.75 Complaint*, Ohio Court of Claims, Case No. 2016-00856-PQ (February 1, 2017). Liberty Township asked the Court to find that Duckett's personal notes were not public records for three reasons: Duckett was a private individual not subject to Ohio's Public Records Act, that Duckett's notes were personal notes not public records, and finally, that Liberty Township did not possess, and had never possessed, Duckett's notes.

**{¶17}** The Special Master assigned to the case issued a Report and Recommendation on February 22, 2017, finding that Duckett's notes were public records. *Report and Recommendation,* Ohio Court of Claims*,* Case No. 2016-00856-PQ (February 22, 2017).

**{¶18}** The Special Master recommended denying the Township's motion to dismiss. (*Report and Recommendation*, p. 6). Turning to the merits, the Special Master found that "with respect to possession of the Duckett notes, I find failure of proof by clear and convincing evidence that the notes, other than the transcripts and audio recordings of the Jensen interviews, have been or are physically kept by the Township." Id. at 7. Finally, the Special Master stated:

Upon consideration of the pleadings and attachments, I find that requesters have established by clear and convincing evidence that the Duckett notes are public records pursuant to R.C. 149.43(A). I further conclude that the failure of the Township to provide the Duckett notes in response to requester's requests, in absence of a valid exception to release, denied requesters access to a public record in violation of division (B) of section 149.43 of the Revised Code. Accordingly, I recommend that the court issue an order GRANTING requesters' claim, and which

1)       directs the Township to provide requesters with the Duckett notes, and

2)       provides that requesters are entitled to recover from the Township the costs associated with this action, including the twenty-five dollar filing fee. R.C. 2743.75(F)(3)(b).

*Report and Recommendation* at 16.

{¶19} Liberty Township timely filed objections to the Special Master's decision, and objected to the decision on eight separate grounds. *Objections to the Special Master's Report and Recommendation,* Ohio Court of Claims, Case No. 2016-00856-PQ (March 3, 2017). To summarize, Liberty Township argued the Special Master erred when he concluded Duckett's personal notes were public records, erred when he concluded Duckett was a private individual subject to Ohio's Public Records Act, and erred when he concluded Duckett's personal notes were public records subject to disclosure. Id. Appellees filed a reply to the objections, urging the Court of Claims to adopt the Report and Recommendation. *Reply to Respondent's Objections to the*

*Special Master's Report and Recommendations,* Ohio Court of Claims, Case No. 2016-00856-PQ (March 22, 2017).

**{¶20}** On March 29, 2017, the Court of Claims issued an Entry adopting the Report and Recommendation, overruling Liberty Township's objections. *Entry Adopting Report and Recommendation,* Ohio Court of Claims, Case No. 2016- 00856-PQ (March 29, 2017).

### Assignments of Error

**{¶21}** Liberty Township raises three assignments of error,

**{¶22}** "I. THE OHIO COURT OF CLAIMS ERRED WHEN IT FOUND DUCKETT WAS A PRIVATE INDIVIDUAL SUBJECT TO OHIO'S PUBLIC RECORDS ACT.

**{¶23}** "II. THE OHIO COURT OF CLAIMS ERRED WHEN IT FOUND DUCKETT'S NOTES WERE NOT PERSONAL NOTES AND THEREFORE RECORDS BECAUSE DUCKETT'S NOTES WERE TAKEN FOR HIS OWN CONVENIENCE IN ORDER TO LATER PREPARE A REPORT.

**{¶24}** "III. THE COURT OF CLAIMS ERRED WHEN IT FOUND DUCKETT'S NOTES ARE PUBLIC RECORDS SUBJECT TO DISCLOSURE BECAUSE THE NOTES ARE NOT KEPT BY LIBERTY TOWNSHIP, AND ARE THEREFORE NOT PUBLIC RECORDS."

### Public Records

**{¶25}** Ohio's Public Records Act, codified at R.C. 149.43, mandates full access to public records upon request, unless the requested records fall within one of the exceptions specifically enumerated in the Act. *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency,* 88 Ohio St.3d 166, 170, 724 N.E.2d 411

(2000). The Act requires that "upon request and subject to division (B)(8) of this section, all public records responsive to the request shall be promptly prepared and made available for inspection to any person * * * [and] upon request a public office or person responsible for public records shall make copies of the requested public record * * *." R.C. 149.43(B)(1).

{¶26} "The Public Records Act reflects the state's policy that 'open government serves the public interest and our democratic system.'" *State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 13, *quoting State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20. "Consistent with this policy, we construe R.C. 149.43 liberally in favor of broad access and resolve any doubt in favor of disclosure of public records." Id.

*Burden of Proof*

{¶27} R.C. 2743.75 does not define the burden of proof in an action commenced in the Court of Claims to obtain public records. However, "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6; *see also* R.C. 149.43(C)(1); R.C. 2743.75(C)(1).

{¶28} To be entitled to a writ of mandamus compelling the production of public records, a relator must establish by clear and convincing evidence that the relator has a clear legal right to the records and that the respondent has a clear legal duty to provide them. *State ex rel. Cincinnati Enquirer v. Sage*, 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, ¶ 10. Further, a governmental body refusing to release records has the

burden of proving that the records are excepted from disclosure pursuant to R.C. 149.43. *State ex rel. Natl. Broadcasting Co. v. Cleveland*, 38 Ohio St.3d 79, 526 N.E.2d 786, (1988), para 2 of the syllabus. *Accord, State ex rel. Thomas v. Ohio State University,* 71 Ohio St.3d 245, 247, 643 N.E.2d 126(1994); *State ex rel James v. Ohio State University,* 70 Ohio St.3d 168, 169, 637 N.E.2d 911(1994).

{¶29} If courts were to apply a different burden of proof to a public records action commenced in the Court of Claims under R.C. 2743.75 than to a public records mandamus action commenced pursuant to R.C. 149.43(C)(1)(b), inconsistency would result. A party may establish a right to relief under one burden of proof but not the other burden of proof.

{¶30} To promote consistent application of the public records law, we shall review a case brought pursuant to R.C. 2743.75 under the standard of proof required in cases brought under R.C. 149.43(C)(1)(b). The special master applied that burden of proof in the case at bar. *See*, *Report and Recommendation of the Special Master,* February 22, 2017 at 4.

*Appellate Review*

{¶31} The Supreme Court of Ohio has concluded that the issue of whether information sought is confidential and privileged from disclosure is a question of law that should be reviewed de novo. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, at ¶ 13; *see also Roe v. Planned Parenthood Southwest Ohio Region,* 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, ¶ 29. "When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate." *Medical Mutual of Ohio v. Schlotterer,* 122 Ohio St.3d 181,

2009-Ohio-2496, 909 N.E.2d 1237, ¶13 (*citing*, *Swartzentruber v. Orrville Grace Brethren Church*, 163 Ohio App.3d 96, 2005-Ohio-4264, 836 N.E.2d 619 (9th Dist.), ¶ 6; *Huntsman v. Aultman Hosp.*, 5th Dist. Stark No. 2006 CA 00331, 2008-Ohio-2554, ¶ 50).

**{¶32}** Application of statutory language, to determine whether specific information is confidential and privileged, is a question of law that we must review de novo. *See Flynn v. Univ. Hosp., Inc.*, 172 Ohio App.3d 775, 2007-Ohio-4468, 876 N.E.2d 1300, ¶ 4 (1st Dist.); *Block Communications, Inc. v. Pounds*, 6th Dist. Lucas No. L-13-1224, 2015-Ohio-2679, ¶44 (trade secrets pursuant to R.C. 1333.51). However, insofar as factual issues must be determined by the trial court as a predicate to resolving the legal question of privilege, such factual determinations should be accorded deference. *MA Equip. Leasing I, LLC v. Tilton*, 10th Dist., 2012-Ohio-4668, 980 N.E.2d 1072, ¶18; *Block Communications, Inc. v. Pounds*, 2015-Ohio-2679, ¶44.

**{¶33}** We find the standard of review utilized to determine whether specific information is confidential and privileged to be the appropriate standard for the analysis of a public records request case. We review questions of law de novo and questions of fact under an abuse of discretion standard.

I.

**{¶34}** In the First Assignment of Error, Liberty Township contends that the special master and the judge erred when it found Duckett was a private individual subject to Ohio's Public Records Act. Subsumed within this generalized objection are three challenges to the trial court's ruling. Specifically, Liberty Township contends that: 1).Duckett was not carrying out a function of Liberty Township when he conducted his investigation; 2). The Board of Trustees did not monitor Duckett's investigation because

of the due process considerations required by R.C. 505.38 investigations; and 3). The trustees did not have access to Duckett's personal notes because they were not filed with the Board during the R.C. 505.38 hearing.

**A. *The "functional equivalency test" and the "quasi-agency test.***

{¶35} The Ohio Supreme Court has developed two distinct tests to determine whether a private entity is subject to the public records law.

*1. The "functional equivalency test."*

{¶36} "'Public office' includes any state agency, public institution, political subdivision, or other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government." R.C. 149.011(A).

{¶37} The Ohio Supreme Court has held that a private entity may be the "functional equivalent" of a public office where the court analyzes the following factors: (1) whether the entity performs a governmental function; (2) the level of government funding; (3) the extent of government involvement or regulation; and (4) whether the entity was created by the government or to avoid the requirements of the Public Records Act. *State ex rel. Oriana House, Inc. v. Montgomery*, 110 Ohio St.3d 456, 2006-Ohio-4854, 854 N.E.2d 193, paragraph two of the syllabus. This functional-equivalency analysis "begins with the presumption that private entities are not subject to the Public Records Act absent a showing by clear and convincing evidence that the private entity is the functional equivalent of a public office." Id. at ¶ 26. Courts must apply the functional-equivalency analysis on a case-by-case basis, "examining all pertinent factors with no single factor being dispositive." Id. at ¶ 23, *citing Ry. Labor Executives Assn. v. Consol.*

*Rail Corp.*, 580 F.Supp. 777, 778 (D.C. 1984) ("All relevant factors are to be considered cumulatively, with no single factor being essential or conclusive.").

### a. Application of the factors to the facts of this case.

**{¶38}** In the case at bar, Duckett was performing a governmental function. A "governmental function" traditionally includes such tasks as providing police, fire, and emergency services, public education, and a free public library system, preserving the peace, regulating the use and maintenance of roads, operating jails, regulating traffic, and collecting refuse. See R.C. 2744.01(C)(2). The decision to remove a firefighter is regulated under R.C. 733.35 to R.C. 733.39. A private party cannot initiate removal proceedings or conduct the removal hearing. A private party is limited to investigating the conduct and preparing the charges if necessary. The ultimate decision and responsibility for investigating, initiating, hearing and deciding the issue of whether to remove a fire chief are "governmental functions." To remove such officer the votes of two thirds of the Township Trustees is required. R.C. 733.36.

**{¶39}** Turning to the second factor, the level of government funding, we note Duckett was paid by Liberty Township with public tax dollars. *See,* Requestor's Exhibit A.

**{¶40}** The extent of governmental involvement in the removal of a firefighter or a fire chief is extensive and can only be accomplished in accordance with procedures established by the legislature. R.C. 733.35 to R.C. 733.39. A private person must be appointed by the Township Trustees and must perform the services set forth in R.C. 733.35.

**{¶41}** Nothing in the record indicates Duckett was appointed to avoid the requirements of the Public Records Act. *See, State ex rel. Oriana House, Inc. v. Montgomery*, 110 Ohio St.3d 456, 2006-Ohio-4854, 854 N.E.2d 193, ¶ 34 (2006).

**{¶42}** Considering the totality of the above factors, we find that Duckett is the functional equivalent of a public office sufficient to compel compliance with the Public Records Act.

### 2. The "quasi-agency test."

**{¶43}** Ohio courts have also held that when a public office contracts with a private entity to perform government work, the private entity can be a "person responsible for public records" sufficient to compel compliance with the Public Records Act, even if not a "public office." *State ex rel. Toledo Blade Co. v. Bur. of Workers' Comp.*, 106 Ohio St.3d 113, 2005-Ohio-3549, 832 N.E.2d 711, ¶ 20; R.C. 149.43(C). Accordingly, under this "quasi-agency" theory, the private entity may be subject to R.C. 149.43 where (1) the private entity prepares records in order to carry out a public office's responsibilities; (2) the public office is able to monitor the private entity's performance; and (3) the public office has access to the records for this purpose. *State ex rel. Carr v. Akron*, 112 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d 948, ¶ 36, *citing State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 39, 550 N.E.2d 464 (1990); *see also State ex rel. ACLU of Ohio v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553.

**1. Duckett was carrying out a function of the township when he conducted his investigation.**

**{¶44}** R.C. 505.38 defines a process that is preliminary to the removal of a fire

chief.  Pursuant to R.C. 505.38(A), a fire chief continues in office until removed from that office, and in order to be removed from that office, the appointing authority must follow the removal proceedings contained in R.C. 733.35 to 733.39.  Consistent with R.C. 505.38(A), a board of township trustees may institute removal proceedings of the fire chief when it has reason to believe the fire chief is guilty of, "... bribery, misfeasance, malfeasance, nonfeasance, misconduct in office, gross neglect of duty, gross immorality, or habitual drunkenness..." in the performance of the fire chief's official duties.  R.C. 733.35.

{¶45}  The board may designate the fire chief or a private citizen to investigate any alleged misconduct.  R.C. 505.38(A) provides in relevant part,

> To initiate removal proceedings, and for that purpose, the board shall designate the *fire chief or a private citizen* to investigate the conduct and prepare the necessary charges in conformity with those sections. (Emphasis added).

{¶46}  No special qualifications or expertise is required of the private citizen.  In other words, anyone can serve.  Compare R.C. 2743.75, which states,

> (A) In order to provide for an expeditious and economical procedure that attempts to resolve disputes alleging a denial of access to public records in violation of division (B) of section 149.43 of the Revised Code, except for a court that hears a mandamus action pursuant to that section, the court of claims shall be the sole and exclusive authority in this state that adjudicates or resolves complaints based on alleged violations of that section. The clerk of the court of claims shall designate one or more current employees or hire one or more individuals to serve as special masters to

hear complaints brought under this section. *All special masters shall have been engaged in the practice of law in this state for at least four years and be in good standing with the supreme court at the time of designation or hiring. The clerk may assign administrative and clerical work associated with complaints brought under this section to current employees or may hire such additional employees as may be necessary to perform such work.* (Emphasis added).

{¶47} In other words, if the legislature had intended the private citizen to have special powers, qualification, duties or requirements they would have spelled those out in R.C. 505.38(A). They did not. Accordingly, the private citizen and the fire chief stand on equal ground when conducting an investigation. To accept Liberty Township's argument would lead to an incongruous and disparate result. The Township employs the fire chief. When the fire chief conducts an investigation into a firefighter's alleged misconduct the public records laws would apply; however, if a private citizen investigates the alleged misconduct of the fire chief the private citizen's investigation would be shielded from public scrutiny. Nothing in R.C. 505.38(A) or in R.C. 733.35 to 733.39 requires the private citizen be treated any differently than a fire chief when conducting an investigation pursuant to appointment. Nor can it be seen that the legislature intend the investigation of alleged misconduct of a fire chief be accorded more protection than the investigation into the alleged misconduct of any other employee of the department.

{¶48} The fire chief or the private citizen will prepare charges if the investigation concludes a firefighter or the fire chief have violated general or specific standards of conduct. R.C. 733.35. The charges written by the investigator must include detailed

statements of alleged guilt, and those charges are then filed with the board and served upon the fire chief.  Id.  Once the charges are filed, the charges must be heard at the next regular meeting of the board unless the fire chief seeks an extension of time.  R.C. 733.36.

{¶49} Liberty Township Resolution 16-0321-11, which appointed Duckett, provides,

**Authorize Expenditure for Investigatory Review of Fire Department**

WHEREAS, it is incumbent upon the Board of Trustees to ensure the Liberty Township Fire Department is managed and operating in the most effective and efficient manner, and

WHEREAS, the Board of Trustees has the authority to conduct an investigation and/or review of the operations and management of the Fire Department to assist the Trustees and management in improving the operations and performance of the department, and

WHEREAS, the Trustees approved Resolution #16-0307-04 which in part designated Laurie Worcester to complete this investigation and since that time Ms., Worcester is no longer able to perform these services and, therefore, another citizen has been selected to conduct this investigation.

NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF TRUSTEES OF LIBERTY TOWNSHIP, DELAWARE COUNTY, OHIO to designate Douglas Duckett to investigate the conduct of Fire Chief Tim Jensen and prepare the necessary charges pursuant to Section 505„38 of the Ohio Revised Code at a cost not to exceed $7,500.00, any additional

expenditures to Mr. Duckett will be considered by the Board prior to the services being performed.

{¶50} Accordingly, Liberty Township recognizes that the statutory process for removing a fire chief from office is a function coming under its jurisdiction. Duckett was to "file with the legislative authority, except when the removal of such head of department or officer is otherwise provided for, written charges against such person, setting forth in detail a statement of such alleged guilt and, at the same time, or as soon thereafter as possible, serve a true copy of such charges upon the person against whom they are made." R.C. 733.35. Because the Board of Trustees must hear the charges and conduct the hearing, an investigator is necessary. The investigator performs the function of the mayor of a municipal corporation under R.C. 733.35. The action remains one for the removal of a township employee governed by R.C. 733.35 to R.C. 733.39 and under the jurisdiction of the Board of Trustees. The investigation and preparation of charges is not a private function. The Board of Trustees must initiate the removal proceedings by appointing an investigator. There is no right provided for a private, third party to initiate the process.

{¶51} Accordingly, the Board of Trustees was engaged in the performance of a governmental function when they appointed Duckett to conduct the investigation of the fire chief pursuant to R.C. 505.38(A). Duckett was engaged in the performance of a governmental function acting in place of the Board of Trustees when pursuant to R.C. 505.38(A) he conducted his investigation and prepared the documents for the Board of Trustees to initiate the removal proceedings under R.C. 733.35.

**2. The Township did monitor Duckett's investigation.**

**{¶52}** Liberty Township argues that it did not monitor Duckett's performance because the Board of Trustees was required to conduct the hearing on the charges involving Chief Jensen. Liberty Township contends that to monitor the investigation would have violated Chief Jensen's due process rights.

**{¶53}** However, in contradiction of those concerns, Duckett's detailed Billing Statement submitted as Requestor's Exhibit B contains the following:

Initial telephone conference with Matt Huffman and Cathy Buehrer to discuss scope of investigation; review of Liberty Township website for information on key figures in Liberty Township.          3/10/16          0.75

Meeting with Matt Huffman and Cathy Buehrer to review background to case and related documents; plan for witness interviews. 3/15/16   7.50

Initial review of background documents and collective bargaining agreement.                                                            3/18/16          1.25

Reviewed notes and document summary; prepared detailed outline of investigatory interview of Cathy Buehrer.          3/21/16          2.00

Drafted detailed outline of investigatory interview of Matt Huffman, Trustee Shyra Eichhorn, Battalion Chiefs James Reardon, Bill Piwtorak, and Duane Price, and FF Chalaco Clark; T/C with attorney Edward Kim re procedural issues and notice of interviews: redrafted notice of interviews and sent to Matt Huffman.                                                  3/22/16          5.00

T/Cs with Matt Huffman re interview notices and possible interview with Dr. Yamarick; reviewed and revised interview schedule, outline investigatory interview of Trustee Melanie Leneghan.  T/Cs with Matt

Huffman and Cathy Buehrer, as well as union attorney Michael Moses, re interview procedures and Garrity issues; updated interview outlines.

3/23/16      2.50

T/C with Matt Huffman; travel to Powell; investigatory interviews of Cathy Buehrer Trustee Eichhorn, FF Chalaco, Clark, and BC Bill Piwtorek; multiple T/Cs with attorney Mike Moses; debriefed with client; travel to hotel. Reviewed summary prepared by Trustee Leneghan and revised interview outline based on her concerns; revised other outlines to reflect Garrity notices to bargaining-unit witnesses.    3/24/16      12.50

Planning discussions with Matt Huffman; investigatory interviews with BC Jim Reardon, FF Scott Simmons, Trustee Leneghan, and BC Duane Price; debriefing with clients and discussion of next steps; travel to Cincinnati.                                      3/25/16      9.50

T/C with Matt Huffman; outlined investigatory interview with Trustee Thomas Mitchell.                                      3/28/16      0.75

Travel to Liberty Township; completed investigatory interview of Cathy Buehrer; discussion of next steps with Mr. Huffman and Ms. Buehrer; travel to hotel; reviewed and revised outline of Trustee Mitchell's interview.

3/29/16      5.75

Investigatory interviews of Trustee Thomas Mitchell and Township Administrator Matt Huffman; debriefing with clients; travel to Cincinnati.

3/30/16      6.50

T/C with Cathy Bucker re additional interviews; worked out outlining remaining bystander witness interviews.          4/1/16          0.25

Multiple T/Cs and e-mail with Cathy Buehrer re interview schedule for Tuesday; drafted outlines of interviews of Ryan Hanf, Mickey Smith, Jim Cirigliano, Mark Gerber, and Dr. Warren Yamarick.     4/4/16          3.00

Travel to Liberty Township; completed investigatory interview of Ryan Hanf, Mickey Smith, Jim Cirigliano, and Warren Yamarick, M.D., return to Cincinnati.                         4/5/16          12.50

T/C with Matt Huffman and with Edward Kim, Esq. to brief on status of investigation and next steps.                    4/6/16          0.75

Inquiries from news media; e-mails and T/C with Matt Huffman on response and on arranging interview with Dr. Mark Gerber.    4/12/16 0.25

T/Cs with Dr. Mark Gerber re scheduling; T/Cs and e-mails with Edward Kim and Matt Huffman re scheduling and status or investigation; retrieved and saved or printed additional documents requested.  Second, extended T/C with Mr. Kim to review end of investigatory process; reviewed documents to prepare for interview of Chief Jensen.

4/14/16          0.75

T/C with Matt Huffman; reviewed additional documents provided and notes from earlier witness interviews.  Additional T/C with Matt Hoffman and Cathy Buehrer re additional, possible witness.        4/15/15          2.00

Began outline of investigatory interview of Chief Jensen.

4/17/16          1.50

Continued work on outline of interview of Chief Jensen.

4/18/16          0.075

Completed outline of investigatory interview of Chief Jensen; T/Cs with attorney Edward Kim and Matt Huffman re arrangements for tomorrow's interviews and records requests; travel to Powell; further review of and addition to outlines.

4/21/16          7.50

Investigatory interviews of former Fiscal Officer Mark Gerber and Fire Chief Tim Jensen; debriefing with attorney Edward Kim and Matt Huffman; return travel to Cincinnati.                              4/22/16          11.00

Concluded investigatory interview of Fire Chief Jensen; travel to and from Liberty Township; T/C with Edward Kim.          4/25/16          8.50

Extended T/C with Edward Kim, Matt Huffman, and Cathy Buehrer re status and direction of investigation; reviewed notes of interviews and began outline of issues and completed draft of factual summary in report.

4/26/16          2.25

\* \* \*

**{¶54}** It is clear that the Township through the Trustees[3], Administrator[4] and Attorney[5] monitored the investigation by conferring repeatedly with Duckett in person and by telephone to review documents, plan interviews, debrief with client, revise interview

---

[3] Eichhorn, Leneghan and Mitchell.
[4] Matt Huffman
[5] Ed Kim

outlines based on concerns of Trustee Leneghan, discuss next steps, discuss procedural issues, prepare status updates, assist with briefing and direct the filing of charges.

**{¶55}** Although Liberty Township contend that the billing references show that "Duckett needed to contact various Township personnel in order to properly coordinate and schedule his investigation,"[6] we note Duckett did not submit an affidavit. Nor were his notes sealed and submitted for an in camera inspection by the lower court.

### 3. The Trustees could have accessed the Duckett notes.

**{¶56}** Liberty Township next argues that it did not have access to the notes because the notes were not filed with the Board of Trustees. In addition, Liberty Township contends that they are prohibited from accessing the notes out of concern for Captain Jensen's right to due process.

**{¶57}** At the outset, we note that the disciplinary proceedings against Jensen have concluded. Therefore, there are no due process concerns as to the Board's ability to now access the Duckett notes. The question to be addressed is not whether Liberty Township could have accessed the notes to prosecute Jensen. Rather, the issue presently is whether the public is entitled to review the notes.

**{¶58}** In permitting mandamus against "either the governmental unit or the person responsible for a public record * * * [, the statute] manifests an intent to afford access to public records, *even when a private entity is responsible for the records*." *State ex rel. Mazzaro v. Ferguson,* 49 Ohio St.3d 37, 39, 550 N.E.2d 464 (1990) (emphasis added). The public's right of access to public records, includes "any material on which a public office could or did rely, * * * *regardless of where they are physically located, or in whose*

---

[6] Liberty Township Brief at 12.

*possession they may be."* *Mazzaro* at 40, 550 N.E.2d 464 (emphasis added). A public office cannot escape its responsibility for public records simply by contracting with a private entity. *See State ex rel. Gannett Satellite Info. Network v. Shirey*, 78 Ohio St.3d 400, 403, 678 N.E.2d 557 (1997). Thus, even without a finding that the private entity is a public office, or a functional equivalent, its records might be subject to disclosure under R.C. 149.43. *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found,* 65 Ohio St.3d 258, 263, 602 N.E.2d 1159 (1992).

**{¶59}** In *State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 550 N.E.2d 464 (1990), the Ohio Supreme Court held that a city auditor who delegated part of an audit of the city to a private firm had to disclose under R.C. 149.43(B) the records created by the private firm. Such records, the Supreme Court held, must be disclosed by a public office when a private entity performs the duties of a public office, the public office is able to oversee the private entity, and the public office has access to the records produced by the private entity. Although the petitioner in *Mazzaro* requested the records from the public office, the Court noted that R.C. 149.43(C) authorizes a mandamus action against either the public office or a private entity holding public records (*citing State ex rel. Mothers Against Drunk Drivers v. Gosser* [1985], 20 Ohio St.3d 30, 33, 20 OBR 279, 282, 485 N.E.2d 706, 710).

**{¶60}** The Ohio Supreme Court has also determined that regardless of whether the relator has established that the private consultant acted as the City's agent or that the relationship between the City and the consultant satisfied the three-prong test in *Mazzaro*, supra, where a public official contracted with a private entity for a public purpose, the

records are public records subject to disclosure under R.C. 149.43. *State ex rel. Gannett Satellite Info. Network v. Shirey,* 78 Ohio St.3d 400, 403, 678 N.E.2d 557(1997).

{¶61} In *Shirey*, the city of Cincinnati contracted with a private consultant to assist the city in hiring a safety director. The private consultant agreed to provide the city manager with a list of final applicants, but all applications and resumes would become the sole property of the private consultant and would not be subject to public review. In response to a reporter's public records request for all records regarding the applicants for safety director, the city denied the request based upon the fact that the records were in the possession of the private contractor.

{¶62} The Ohio Supreme Court determined that the requested documents (which included applicant resumes and supporting documents of the safety director applicants) were subject to disclosure under R.C. 149.43. *Shirey* at 403–404, 678 N.E.2d 557. The court noted that had the city undertaken the task without hiring the private consultant, the records at issue would have been subject to disclosure. Id., *quoting Forum Publishing Co. v. Fargo*, 391 N.W.2d 169, 172 (N.D. 1986). In concluding that the city could not attempt to circumvent R.C. 149.43 by contracting with a private company, the court stated that "to hold otherwise, governmental entities could conceal information concerning the hiring of important public officials from the public by merely delegating this uniquely public duty to a private entity." Id. at 404; *State ex rel. Plain Dealer Publishing Co. v. Cleveland*, 75 Ohio St.3d 31, 661 N.E.2d 187 (1996) (where a public official contracted with a private entity for a public purpose—to assist in the filling of a municipal position—the documents in the private entity's possession are no less a public record simply because they were in the possession of the private entity, regardless of whether an agency relationship had

been established or the entity had been established as the "person responsible for public records").

{¶63}  We find the analysis in *Shirey* to be equally applicable to a case such as the case at bar where the public officials seek to terminate the employment of a township fire chief.  In the case at bar, Duckett was hired to conduct an investigation.  The purpose of this investigation was to determine whether there were sufficient grounds to prepare charges for the removal of the fire chief.  Without question, the provision and maintenance of the fire department is a public function undertaken by the Board of Trustees.  The removal of the acting fire chief directly relates to the operation of the fire department, and can only be accomplished by the Board of Trustees.  To that end, Duckett prepared his reports and interviews in order to carry out the Board's public responsibilities.  If a fire chief rather than a private individual conducts the investigation, then the records of the fire chief, who is a Township employee, would be accessible by the Board and subject to disclosure.

{¶64}  Accordingly, in reviewing the above factors, we find that the relationship between the Township and Duckett satisfied the test in both *Mazzaro* and *Shirey* and is sufficient to compel compliance with the Public Records Act.

{¶65}  For all the foregoing reasons, Liberty Township's First Assignment of Error is overruled.

II.

{¶66}  In the Second Assignment of Error, Liberty Township contends that the Ohio Court of Claims erred when it found Duckett's notes were not personal notes and

therefore not records subject to disclosure because Duckett's notes were taken for his own convenience in order to later prepare a report.

{¶67}  R.C.  149.011 defines the term "record" as follows,

(G) "Records" includes any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

{¶68}  R.C. 149.43(A)(1) defines "public record" as follows,

(1) "Public record" means records kept by any public office, including, but not limited to, state, county, city, village, township, and school district units, and records pertaining to the delivery of educational services by an alternative school in this state kept by the nonprofit or for-profit entity operating the alternative school pursuant to section 3313.533 of the Revised Code.

{¶69}  In *Kish v. Akron*, the Ohio Supreme Court recognized the expansive scope of the R.C. 149.011(G) definition of "records":

We previously have held that the General Assembly's use of "includes" in R.C. 149.011(G) as a preface to the definition of "records" is an indication of expansion rather than constriction, restriction, or limitation and that the statute's use of the phrase "any document" is one encompassing all documents that fit within the statute's definition,

regardless of "form or characteristic."  *State ex rel. Cincinnati Post v. Schweikert* (1988), 38 Ohio St.3d 170, 172–173, 527 N.E.2d 1230.  There can be no dispute that there is great breadth in the definition of "records" for the purposes here.  Unless otherwise exempted or excepted, almost all documents memorializing the activities of a public office can satisfy the definition of "record."  *State ex rel. Beacon Journal Publishing Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 13.

109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶20.  "Even if a record is not in final form, it may still constitute a 'record' for purposes of R.C. 149.43 if it documents the organization, policies, functions, decisions, procedures, operations, or other activities of a public office."  *See State ex rel. Calvary v. Upper Arlington*, 89 Ohio St.3d 229, 232, 729 N.E.2d 1182(2000).

{¶70}  Liberty Township argues that the interview notes were taken only for Duckett's personal convenience, and did not in their own right document the organization, functions, policies, decisions, procedures, operations or other activities of the Township.  Liberty Township cites *State ex rel. Pietrangelo v. City of Avon Lake,* 149 Ohio St.3d 273, 2016-Ohio-5725, 74 N.E.3d 419 in support of its contention that personal notes of a public official are not public records if the notes are taken for the individuals own convenience to later prepare a report and the notes are not kept as part of the department's official records.

{¶71}  We note that in *Pietrangelo*,

The officers state in their affidavits that the officer who wrote the report used his notes to prepare it, and then both officers' notes were

destroyed.  If the notes have been destroyed, correctly or not, they cannot be produced at this point.  Respondents cannot be ordered to produce records that no longer exist.

149 Ohio St.3d, ¶20.  Further, the Ohio Supreme Court noted,

All existing documents related to the December 29, 2014 skate-park incident have apparently been produced, and the case is moot.  We therefore deny the request for a writ.

149 Ohio St.3d, ¶22.  In the case at bar, unlike the officers in *Pietrangelo,* Duckett did not submit an affidavit.  Nor were the notes produced for the lower court to review.

{¶72}  Likewise, in *Hunter v. Ohio Bureau of Workers' Comp.,* also relied upon by Liberty Township,

{¶27}  The evidence at trial indicates that two interviewers were always present during each of the June 2010 interviews conducted by SIU with the three interviewees (appellant, Roach, and Hasty).  A union steward was also present at each interview.  Both interviewers took their own handwritten notes.  Later, the interviewers verbally compared responses from their notes and prepared a typewritten report of the interview; each interviewer subsequently destroyed their own handwritten notes.  In response to his records request, appellant received copies of the typewritten reports documenting his interviews on January 27 and June 22, 2010, as well as the typewritten reports prepared following the interviews of Roach and Hasty conducted on June 24, 2010.

{¶ 28} At trial, the magistrate heard testimony regarding the agency's policy for disposing of interview notes as part of an investigatory interview. Specifically, Fox testified that SIU's "established practice" in handling an investigation is to "memorialize in one document what occurred," and then "our notes are destroyed." (Tr. 175.) Fox stated that the practice followed by the interviewers during the investigatory interviews with appellant, Roach, and Hasty was in accordance with SIU policy. Fox related that both interviewers took notes during the interviews, and that the interviewers subsequently "talked and compared verbally" in the course of preparing the typewritten report. (Tr. 230.) Fox testified that BWC's policy requires consistency with respect to keeping or destroying notes; Fox noted that he "always destroy[s]" his notes. (Tr. 233.)

{¶29} Similar to the testimony of Fox, BWC employees Pandilidis and Saunders testified that they followed SIU policy in shredding the handwritten notes following the interviews. Saunders, who shredded her personal notes after the "final document" was prepared, explained that "[o]nce I was finished with them, they were * * * no longer of administrative value to me * * *. And per policy we always shred them or we always keep them." (Tr. 308.)

{¶ 30} At trial, a copy of SIU's policy regarding interview procedures was admitted into evidence…

10th Dist. Franklin No. 13AP-457, 2014-Ohio-5660.

{¶73} In sharp contrast, in the case at bar Duckett did not submit an affidavit nor were the records produced for review by the lower court. Rather, Liberty Township relies upon Duckett's billing statement as its sole support for its contention that Duckett's notes were for his personal convenience.

{¶74} Duckett's Billing Statement reveals that he prepared "detailed outlines" of his "investigatory interview" with the witnesses before he actually interviewed each witness. Thus, it cannot be said that all of the notes were created contemporaneously with the interviews to provide Duckett a means to refresh his memory. Further, Duckett revised his "interview outline" based upon the concerns of Trustee Leneghan. Thus, it appears Duckett reviewed his outlines with the Trustees and the Trustees had input into the content of the outlines. Duckett's billing statement further suggests the he "debriefed with clients" after conducting each investigatory interview. Thus, the record suggests that Duckett and the Board discussed each person's interview and how the interview related to the charges against Jensen.

{¶75} Thus, whether Duckett's notes did in their own right document the organization, functions, policies, decisions, procedures, operations or other activities of the Township is still in question based on the record before this Court.

{¶76} In our disposition of Liberty Township's First Assignment of Error, we held that the relationship between Liberty Township and Duckett was sufficient to compel compliance with the public records law. Liberty Township does not cite any of the numerous exceptions set forth in R.C. 149.43 as grounds for not disclosing Duckett's notes. Instead, Liberty Township relies exclusively upon its contention that notes were taken only for Duckett's personal convenience. We find that this is the substantial

equivalent of an "exception" to disclosure. Accordingly, Liberty Township bears the burden of proof on this issue.

{¶77} "[E]xceptions to disclosure must be strictly construed against the public records custodian, and the custodian bears the burden to establish the applicability of an exception." *State ex rel. Besser v. Ohio State Univ.* (2000), 89 Ohio St.3d 396, 398, 732 N.E.2d 373; *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 16 (2002). "When a governmental body asserts that public records are excepted from disclosure and such assertion is challenged, the court must make an individualized scrutiny of the records in question. If the court finds that these records contain excepted information, this information must be redacted and any remaining information must be released. The data and records in question should be sealed and preserved as part of the record for possible appellate review." *State ex rel. Nat. Broadcasting Co. v. City of Cleveland*, 38 Ohio St.3d 79, 85, 526 N.E.2d 786, 791–92 (1988)

{¶78} We find Liberty Township did not introduce sufficient evidence to establish an exemption from disclosure or that Duckett's notes did not in their own right document the organization, functions, policies, decisions, procedures, operations or other activities of the Township. Notably lacking is any factual evidence to support Liberty Township's conclusory statements and argument. A custodian does not meet this burden to prove that records are exempt from disclosure if it has not proven that the requested records fall squarely within the exception. *State ex rel. Cincinnati Enquirer v. Jones–Kelley,* 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206. The notes were not provided to the Court of Claims and were not sealed and preserved as part of the record for our review.

**{¶79}** For all the forgoing reasons, Liberty Township's second assignment of error is overruled.

III.

**{¶80}** In the Third Assignment of Error, Liberty Township argues that the Court of Claims erred when it found Duckett's notes are public records subject to disclosure because the notes are not kept by Liberty Township, and are therefore not public records.

**{¶81}** The public's right of access to public records, includes "any material on which a public office could or did rely, * * * regardless of where they are physically located, or in whose possession they may be." *State ex rel. Mazzaro v. Ferguson,* 49 Ohio St.3d 37, 40, 550 N.E.2d 464 (1990). A public office cannot escape its responsibility for public records simply by contracting with a private entity. *See State ex rel. Gannett Satellite Info. Network v. Shirey*, 78 Ohio St.3d 400, 403, 678 N.E.2d 557 (1997).

**{¶82}** Where a public official contracted with a private entity for a public purpose, the records are public records subject to disclosure under R.C. 149.43. *State ex rel. Gannett Satellite Info. Network v. Shirley,* 78 Ohio St.3d 400, 403, 678 N.E.2d 557(1997).

**{¶83}** In *State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 550 N.E.2d 464(1990), the Ohio Supreme Court held that a city auditor who delegated part of an audit of the city to a private firm had to disclose under R.C. 149.43(B) the records created by the private firm. Such records, the Supreme Court held, must be disclosed by a public office when a private entity performs the duties of a public office, the public office is able to oversee the private entity, and the public office has access to the records produced by the private entity. Although the petitioner in *Mazzaro* requested the records from the public office, the Court noted that R.C. 149.43(C) authorizes a mandamus action against

either the public office or a private entity holding public records (*citing State ex rel. Mothers Against Drunk Drivers v. Gosser* [1985], 20 Ohio St.3d 30, 33, 20 OBR 279, 282, 485 N.E.2d 706, 710).

**{¶84}** We have already concluded that under both the functional equivalency test and the quasi-agency test, Duckett prepared records in order to carry out a public office's responsibilities, Liberty Township monitored Duckett's performance and Liberty Township had access to the records.

**{¶85}** In permitting mandamus against "either the governmental unit or the person responsible for a public record * * * [, the statute] manifests an intent to afford access to public records, *even when a private entity is responsible for the records.*"  *State ex rel. Mazzaro v. Ferguson,* 49 Ohio St.3d 37, 39, 550 N.E.2d 464 (1990) (emphasis added). The public's right of access to public records, includes "any material on which a public office could or did rely, * * * *regardless of where they are physically located, or in whose possession they may be." Mazzaro* at 40, 550 N.E.2d 464 (emphasis added).  A public office cannot escape its responsibility for public records simply by contracting with a private entity.  *See State ex rel. Gannett Satellite Info. Network v. Shirey*, 78 Ohio St.3d 400, 403, 678 N.E.2d 557 (1997).  Thus, even without a finding that the private entity is a public office, or a functional equivalent, its records might be subject to disclosure under R.C. 149.43.  *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found,* 65 Ohio St.3d 258, 263, 602 N.E.2d 1159 (1992).

**{¶86}** In *State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 550 N.E.2d 464(1990), the Ohio Supreme Court held that a city auditor who delegated part of an audit of the city to a private firm had to disclose under R.C. 149.43(B) the records created by

the private firm.  Such records, the Supreme Court held, must be disclosed by a public office when a private entity performs the duties of a public office, the public office is able to oversee the private entity, and the public office has access to the records produced by the private entity.  Although the petitioner in *Mazzaro* requested the records from the public office, the Court noted that R.C. 149.43(C) authorizes a mandamus action against either the public office or a private entity holding public records (*citing State ex rel. Mothers Against Drunk Drivers v. Gosser* [1985], 20 Ohio St.3d 30, 33, 20 OBR 279, 282, 485 N.E.2d 706, 710).

{¶87}  The Ohio Supreme Court has also determined that regardless of whether the relator has established that the private consultant acted as the City's agent or that the relationship between the City and the consultant satisfied the three-prong test in *Mazzaro*, supra, where a public official contracted with a private entity for a public purpose, the records are public records subject to disclosure under R.C. 149.43.  *State ex rel. Gannett Satellite Info. Network v. Shirey,* 78 Ohio St.3d 400, 403, 678 N.E.2d 557(1997).

{¶88}  In *Shirey*, the city of Cincinnati contracted with a private consultant to assist the city in hiring a safety director.  The private consultant agreed to provide the city manager with a list of final applicants, but all applications and resumes would become the sole property of the private consultant and would not be subject to public review.  In response to a reporter's public records request for all records regarding the applicants for safety director, the city denied the request based upon the fact that the records were in the possession of the private contractor.

{¶89}  The Ohio Supreme Court determined that the requested documents (which included applicant resumes and supporting documents of the safety director applicants)

were subject to disclosure under R.C. 149.43. *Shirey* at 403–404, 678 N.E.2d 557. The court noted that had the city undertaken the task without hiring the private consultant, the records at issue would have been subject to disclosure. Id., *quoting Forum Publishing Co. v. Fargo*, 391 N.W.2d 169, 172 (N.D. 1986). In concluding that the city could not attempt to circumvent R.C. 149.43 by contracting with a private company, the court stated that "to hold otherwise, governmental entities could conceal information concerning the hiring of important public officials from the public by merely delegating this uniquely public duty to a private entity." Id. at 404; *State ex rel. Plain Dealer Publishing Co. v. Cleveland*, 75 Ohio St.3d 31, 661 N.E.2d 187 (1996) (where a public official contracted with a private entity for a public purpose—to assist in the filling of a municipal position—the documents in the private entity's possession are no less a public record simply because they were in the possession of the private entity, regardless of whether an agency relationship had been established or the entity had been established as the "person responsible for public records").

{¶90} Accordingly, the notes were not exempt from disclosure simply because the notes are in Duckett's possession.

{¶91} For all the foregoing reasons, Liberty Township's Third Assignment of Error is overruled.

**{¶92}** The Judgment of the Ohio Court of Claims is affirmed and this matter is remanded for proceedings in accordance with our opinion and the law.

**{¶93}** The court finds there were reasonable grounds for this appeal.


By Gwin, J.,

Delaney, P.J., and

Wise, John, J., concur