**FLYNN, Appellees,**

v.

**UNIVERSITY HOSPITAL, INC., Appellant, et al.**

[Cite as *Flynn v. Univ. Hosp., Inc.*, 172 Ohio App.3d 775, 2007-Ohio-4468.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–060815.

Decided Aug. 31, 2007.

David A. Goldstein Co., L.P.A., and David A. Goldstein, for appellees.

Frost, Brown Todd L.L.C. and Bill J. Paliobeis, for appellant.

DINKELACKER, Judge.

{¶ 1} Plaintiffs-appellees, Sean and Jennifer Flynn, filed a malpractice action against defendant-appellant, University Hospital, Inc., and other defendants. They alleged that, due to the defendants' negligence, Sean Flynn had been severely burned during shoulder surgery.

{¶ 2} During discovery, the Flynns requested that University Hospital produce an incident report related to the surgery. University objected, contending that the report was privileged. The Flynns filed a motion to compel production of the report, and University filed a motion for a protective order. The trial court granted the Flynns' motion to compel and ordered University to provide the Flynns with "all written statements provided by employees and/or agents and/or any other materials resulting from the incident with the Plaintiffs." This appeal followed.

{¶ 3} In its sole assignment of error, University contends that the trial court erred in ordering production of the incident report. It argues that the report was protected by the attorney-client privilege, the peer-review privilege, and the privilege for hospital-incident reports. University's argument is well taken as it relates to the attorney-client privilege.

{¶ 4} Generally, we apply an abuse-of-discretion standard to the review of discovery orders. But because the trial court's discovery order involved the application or construction of statutory law regarding privilege, we review the order de novo.[1]

{¶ 5} University contends that the report was privileged under R.C. 2305.253, which provides that "an incident or risk management report and the contents of an incident or risk management report are not subject to discovery in, and are not admissible in evidence in the trial of, a tort action." R.C. 2305.25(D) defines an "incident or risk-management report" as "a report of an incident involving injury or potential injury to a patient as a result of patient care provided by health care providers, including both individuals who provide health care and entities that provide health care, that is prepared by or for the use of a peer review committee of a health care entity and is within the scope of the functions of that committee."

{¶ 6} Thus, if this type of document is prepared by, or for the use of, a peer-review committee as defined in R.C. 2305.25(E), it is confidential and not

---

1. *Wright v. Perioperative Med. Consultants,* 1st Dist. No. C–060586, 2007-Ohio-3090, 2007 WL 1791818, ¶ 9; *Quinton v. MedCentral Health Sys.,* 5th Dist. No. 2006CA0009, 2006-Ohio-4238, 2006 WL 2349548, ¶ 13.

subject to discovery.[2]   But labeling a document an incident report does not mean that it meets the statutory definition of an incident report.[3]   The party asserting the privilege bears the burden to prove that it applies.[4]

■   {¶ 7} University presented the deposition testimony of James Wells, a nurse who was present at Sean Flynn's surgery.   Wells stated that he had prepared the report as a matter of protocol.   He filled out a blank form and submitted it to his supervisor, who was the manager of the operating room.   He did not know if anyone else had made a similar report.   In a later affidavit, Wells stated that "the incident report was prepared for transmittal to the attorneys in the Office of Risk Management * * * for purposes of quality assurance and legal counsel."   He never said that the report was prepared for or provided to any peer-review committee as defined in R.C. 2305.25(E).

{¶ 8} The only mention at all of any sort of peer-review committee came during the testimony of Dr. Michael Wind.   He stated that he had opinions about the cause of Sean Flynn's burn that "he was going to share with the other residents" orally at their "M & M conference."   He described the "M & M conference" as one "where we present complications that happen in the department and * * * try to learn from it, * * * so they don't happen again."   He did not present the case to the conference because they "ran out of time."   He stated that he had never prepared any written statement or report about the incident, and he did not mention Wells's report in his deposition.

{¶ 9} Thus, nowhere does the record indicate that Wells's report or any report was used by, or prepared for use by, any peer-review committee.   University failed to show that the report met the statutory definition of an incident report.   Therefore, it failed to meet its burden to show that the privilege in R.C. 2305.253 applied.

■   {¶ 10} University also contends that the report was privileged under R.C. 2305.24, which provides for the confidentiality of information furnished to a quality-assurance or utilization committee, and under R.C. 2305.251 and 2305.252, which provide for confidentiality and immunity related to peer-review committees.   These privileges, like any other privilege, may be waived by the holder.[5]   University failed to raise them in the trial court and, therefore, waived them.

---

2.   *Cook v. Toledo Hosp.,* 169 Ohio App.3d 180, 2006-Ohio-5278, 862 N.E.2d 181, ¶ 23.

3.   *Rinaldi v. City View Nursing & Rehab. Ctr., Inc.,* 8th Dist. No. 85867, 2005-Ohio-6360, 2005 WL 3215146, ¶ 20.

4.   *Cook,* supra, at ¶ 28; *Quinton,* supra, at ¶ 24.

5.   *Prinz v. Ohio Counselor & Social Worker Bd.* (Jan. 21, 2000), 1st Dist. No. C–990200, 2000 WL 43707.

{¶ 11} Further, University failed to show that Wells's report or any report was prepared for or submitted to a quality-assurance or a peer-review committee. At a bare minimum, the party claiming the privilege must show that such a committee existed and that the committee investigated the case in question.[6]

{¶ 12} Finally, University contends that the attorney-client privilege protected the report. We agree. R.C. 2317.02(A) codifies and defines what the common law originally recognized as a nondisclosure privilege arising from the attorney-client relationship.[7] It provides that an attorney shall not testify "concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client * * *. However, if the client voluntarily testifies or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject."

{¶ 13} The party seeking to exclude testimony under this privilege bears the burden to show (1) that an attorney-client relationship existed and (2) that confidential communications took place within the context of that relationship.[8] The privilege encompasses communications made to an employer's counsel by employees and protects against compelled disclosure of actual attorney-client communications by employees when the communications are made in anticipation of litigation.[9] Generally, the privilege covers incident reports prepared for the risk-management department of a hospital.[10]

{¶ 14} Wells's affidavit stated that he had prepared the incident report for the attorneys in the hospital's risk-management department. The record also contains the affidavit of David F. Schwallie, the hospital's director of risk management. He stated that the office of risk management had received the report, which was "prepared for the specific purposes of notifying the Risk Management department, as well as legal counsel for University Hospital, of possible claims, for quality assurance purposes and to inform outside legal counsel." He added that the report was not part of the medical records, that it was not otherwise

6. *Smith v. Manor Care of Canton*, 5th Dist. Nos. 2005–CA–00100, 2005–CA–00160, 2005–CA–00162, and 2005–CA–00174, 2006-Ohio-1182, 2006 WL 636975, ¶ 61.

7. *Gallimore v. Children's Hosp. Med. Ctr.* (Feb. 26, 1992), 1st Dist. Nos. C–890808 and C–890824, 1992 WL 37742.

8. *Smith v. Midwest Health Servs., Inc.* (Mar. 10, 1993), 1st Dist. No. C–910754, 1993 WL 64260; *Gallimore*, supra.

9. *Tyes v. St. Luke's Hosp.* (Dec. 2, 1993), 8th Dist. No. 65394, 1993 WL 497026.

10. Id.; *Smith*, supra.

available "to persons outside of the attorney-client relationship and/or quality assurance function," and that at no time did agents or employees of University Hospital ever waive the privilege.

{¶ 15} University demonstrated that the report was a communication prepared by its employee for the use of its attorneys in anticipation of litigation. Further, it demonstrated the existence of the attorney-client relationship and that the communication occurred in the context of that relationship. Thus, the attorney-client privilege protected the report, and the trial court should not have ordered University to provide it to the Flynns. We sustain University's first assignment of error, reverse the trial court's judgment, and remand the cause for further proceedings.

Judgment reversed
and cause remanded.

PAINTER, P.J., and HILDEBRANDT, J., concur.