FILED
COURT OF APPEALS
DIVISION II

2015 AUG 11 AM 9: 11

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| VALAREE DOEHNE, | No. 46467-5-II |
| Respondent, | |
| v. | |
| EMPRES HEALTHCARE MANAGEMENT, LLC, a Washington Limited Liability Company d/b/a FRONTIER REHABILITATION and EXTENDED CARE CENTER; EMPRES WASHINGTON HEALTHCARE, LLC, a Washington Limited Liability Company d/b/a FRONTIER REHABILITATION and EXTENDED CARE CENTER; and EVERGREEN WASHINGTON HEALTHCARE FRONTIER, LLC, a Washington Limited Liability Company d/b/a FRONTIER REHABILITATION and EXTENDED CARE CENTER, | UNPUBLISHED OPINION |
| Appellants. | |

LEE, J. — Empres Healthcare Management LLC, EmpRes Washington Healthcare LLC, and Evergreen Washington Healthcare Frontier LLC appeal an order compelling their disclosure of the first paragraph of a document that they assert is protected by the attorney-client privilege. They also argue that the final sentence of the paragraph is protected from discovery under the work product doctrine. We agree that the paragraph as a whole is protected by the attorney-client

privilege and that its final sentence is protected opinion work product, and we reverse the trial court's order compelling discovery of this material.

FACTS

Evergreen Washington Healthcare Frontier LLC operates the Frontier Rehabilitation and Extended Care Center in Longview (Frontier facility). EmpRes Healthcare Management LLC (EmpRes) is based in Vancouver and provides management services to the Frontier facility.[1] EmpRes has an in-house legal department in Vancouver and a risk management director (formerly Dick Pflueger) who acts as a conduit between the legal department and insurers regarding liability issues, including workers' compensation and third-party liability.

On the night of February 2, 2010, Valaree Doehne left the Frontier facility after visiting her husband and tripped over a cement wheel stop in the parking lot. She went back into the facility for treatment of her injuries but soon was taken by ambulance to the hospital.

In the days following Doehne's accident, EmpRes' in-house legal department directed Pflueger to conduct an investigation into the incident. At Pflueger's request, Heather Clarno, an administrative assistant to EmpRes' regional operations manager, performed an investigation and prepared a one-page report of her findings. She provided this report to EmpRes' risk management and legal departments.

In 2013, Doehne filed an amended complaint for damages against the Frontier facility and the companies providing it with operating and management services. Doehne alleged in her complaint that at the time of her fall, it was dark and the parking lot and sidewalk outside the

---

[1] EmpRes was formerly known as EHC Management, LLC but we refer to it as EmpRes throughout this opinion for the sake of clarity.

Frontier facility were not well lit. She also alleged that the wheel stop was not well marked or painted.

Doehne subsequently sought discovery of any written statement or report made to anyone at the Frontier facility concerning the incident, including the production of "all memos, documents, logs, notes or other written or electronic memorialization of reports." Clerk's Papers (CP) at 12-13. The defendants objected on the basis that Doehne's request involved work product and privileged material.

Doehne then moved to compel production of the requested material. The defendants responded that the documents being withheld on claim of privilege related to Pflueger's post-incident investigation. Their attorney filed a declaration stating:

> Mr. Pflueger maintained a paper file regarding this incident. This file includes two incident reports from individuals at the facility, which he believes he requested to present to the in-house legal department as part of its analysis of the incident. The paper file also includes analysis about plaintiff's demand that defendants pay for her medical expenses, as well as other documents analyzing the possibility of settling plaintiff's potential claims prior to her filing a lawsuit. In addition, withheld email correspondence involving Mr. Pflueger includes in-house attorneys and/or paralegals as a sender or recipient.

CP at 53 (citations omitted).

During the hearing on Doehne's motion to compel, the defendants explained that the two incident reports in Pflueger's file included Clarno's report and one written by a nurse at the Frontier facility who treated Doehne after her fall.[2] The defendants argued that Clarno's report was prepared in anticipation of litigation because Doehne had asked the Frontier facility to pay her

---

[2] The defendants did not seek review of the trial court's order requiring them to disclose the nurse's report.

medical expenses after sustaining her injuries. The trial court requested an in-camera review of Clarno's report and invited the parties to submit additional authority or evidence regarding whether the report was privileged.

The defendants filed a declaration from Clarno stating that she had not been present at the Frontier facility at the time of Doehne's injuries and had no personal knowledge of the incident. Clarno added:

> In the days following the incident, I performed an investigation and prepared a one-paged type report regarding my findings. I prepared this investigation and incident report consistent with how I generally performed these tasks for my employer on anticipated worker's compensation claims. The report was prepared for and provided to the risk management and legal departments of the management company in Vancouver. My investigation and report were performed in anticipation of litigation by Ms. Doehne.

CP at 70.

Following in-camera review of the Clarno report, the trial court ruled that the second, third, and fourth paragraphs were protected work product and not discoverable because they were "clearly made in anticipation of litigation." Verbatim Report of Proceedings (VRP) at 41. The trial court also ruled that the first paragraph was not protected work product and required its production. The court entered an order compelling discovery that did not specifically address the Clarno report.

The defendants moved for reconsideration, arguing that the trial court's oral ruling failed to address whether the Clarno report was an attorney-client privileged communication. After arguing that the attorney-client privilege applied, the defendants asserted in the alternative that the final sentence of the first paragraph in Clarno's report should be protected from discovery as opinion work product. In its order denying reconsideration, the trial court stated that the first

4

paragraph of Clarno's report was "not protected by the attorney[-]client privilege nor by the work product doctrine and is therefore discoverable." CP at 103.

The defendants sought discretionary review and sent this court a redacted copy of Clarno's report for in-camera review. We granted the defendants' motion for discretionary review and now consider whether the attorney-client privilege or the work product doctrine protects the Clarno report from disclosure.

ANALYSIS

A.  STANDARD OF REVIEW

The attorney-client privilege is codified in RCW 5.60.060(2)(a), and the work product rule is set forth in CR 26(b)(4). Issues of statutory construction are questions of law that we review de novo. *Fellows v. Moynihan*, 175 Wn.2d 641, 649, 285 P.3d 864 (2012); *Jane Doe v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 122 Wn. App. 556, 563, 90 P.3d 1147 (2004), *review denied*, 153 Wn.2d 1025 (2005). We review de novo the interpretation of court rules as well. *Hundtofte v. Encarnación*, 181 Wn.2d 1, 13, 330 P.3d 168 (2014).

We review the trial court's application of the law in a discovery order for abuse of discretion. *Cedell v. Farmers Ins. Co.*, 176 Wn.2d 686, 694, 295 P.3d 239 (2013). A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Dana v. Piper*, 173 Wn. App. 761, 769, 295 P.3d 305, *review denied*, 178 Wn.2d 1006 (2013). A court necessarily abuses its discretion when basing its decision on an erroneous view of the law or applying an incorrect legal analysis. *Dana*, 173 Wn. App. at 769.

B.  ATTORNEY-CLIENT PRIVILEGE

Washington's attorney-client privilege is set forth in RCW 5.60.060(2)(a):

> An attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment.

The purpose of this privilege is to encourage clients to make full disclosure to an attorney so that the attorney can render effective legal assistance. *Pappas v. Holloway*, 114 Wn.2d 198, 203, 787 P.2d 30 (1990); *R.A. Hanson Co. v. Magnuson*, 79 Wn. App. 497, 502, 903 P.2d 496 (1995), *review denied*, 129 Wn.2d 1010 (1996). The attorney-client privilege applies to any information generated by a request for legal advice, including documents created by clients with the intention of communicating with their attorneys. *West v. Dep't of Natural Res.*, 163 Wn. App. 235, 247, 258 P.3d 78 (2011), *review denied*, 173 Wn.2d 1020 (2012). The privilege does not protect documents that are prepared for some purpose other than communicating with an attorney. *Hangartner v. City of Seattle*, 151 Wn.2d 439, 452, 90 P.3d 26 (2004). The burden of showing the existence of an attorney-client relationship and that the requested information involves a privileged communication falls on the party asserting the privilege. *R.A. Hanson Co.*, 79 Wn. App. at 501.

Clarno's report was part of the post-incident investigation performed by EmpRes' risk management director at the direction of the company's in-house legal department. The attorney-client privilege may apply to communications between in-house counsel and multiple lower-level employees in an organization when those communications are made in order to secure legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 394-95, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981); *see also Hasso v. Retail Credit Co.*, 58 F.R.D. 425, 428 (E.D. Penn. 1973) (employee's communication

to corporation's attorney, made at the direction of his superiors in the corporation, was privileged). The defendants maintain that because Clarno was acting on EmpRes' behalf in its attempt to obtain advice from in-house counsel, her report was privileged. *See Upjohn*, 449 U.S. at 389-90 (client of in-house attorney is company itself).

Doehne argues that Clarno prepared her report for her employer rather than a specific attorney and that the report was neither communication nor advice between a client and an attorney. Doehne points out that Clarno stated in her declaration that she prepared her report "consistent with how I generally performed these tasks for my employer." CP at 70. Doehne adds that even if Pflueger presented Clarno's report to in-house counsel as part of his investigation, the act of passing documents to an attorney does not make them privileged communications between a client and an attorney. *See In re Det. of Williams*, 147 Wn.2d 476, 494, 55 P.3d 597 (2002) (party could not create privilege by giving Social Security records to his attorney).

The defendants respond that Pflueger assembled the file that included Clarno's report to assist in-house counsel in "analyzing the possibility of settling plaintiff's potential claims prior to her filing a lawsuit." CP at 53. While Clarno may have prepared her report consistently with the manner in which she prepared other reports, the purpose rather than the manner of preparation guides our analysis. That purpose was to obtain legal advice for EmpRes, which functioned as both employer and client in this case.

The defendants compare Clarno's report to notes that a nurse and teacher made after witnessing a medical crisis during a school field trip in *Soter v. Cowles Pub'g Co.*, 162 Wn.2d 716, 174 P.3d 60 (2007). In that case, the nurse and teacher provided their notes to the school district's attorneys and investigator with the understanding that these materials would be

7

privileged. *Id.* at 747. These notes were privileged because they were "created by clients, in anticipation of litigation, with the intention of communicating information to the attorneys." *Id.*

The record here does not show whether Clarno understood that her report would be privileged. However, as in *Soter*, Clarno did prepare the report "for and provided [it] to the risk management and legal departments . . . in anticipation of litigation." CP at 70. Clarno's report also is comparable to the incident report at issue in *Flynn v. University Hospital, Inc.*, 172 Ohio App. 3d 775, 876 N.E.2d 1300 (2007). In *Flynn*, a nurse prepared a report about a patient's surgery for attorneys in the hospital's risk management department. *Id.* at 778. Because the nurse prepared the report for the purpose of notifying the hospital's legal counsel of possible claims, the report was protected by the attorney-client privilege. *Id.* at 779-80; *see also Cleveland Clinic Health Sys.—E. Region v. Innovative Placements, Inc.*, 283 F.R.D. 362, 368 (N.D. Ohio 2012) (attorney-client privilege generally covers incident reports prepared for hospital risk management department).

The purpose of EmpRes' risk management position "is to act as a conduit between the legal department and insurers regarding liability issues, including workers' compensation and third-party liability, with the goal of avoiding litigation and minimizing liability." CP at 59. The record shows that Clarno's report was prepared to assist in-house counsel in addressing issues of liability and potential litigation. *See Flynn*, 172 Ohio App. 3d at 779-80 (privilege applied where hospital demonstrated that report was a communication prepared by its employee for the use of its attorneys in anticipation of litigation). We hold that the first paragraph of the Clarno report is protected by the attorney-client privilege and that the trial court abused its discretion in compelling the paragraph's disclosure.

C.     WORK PRODUCT

Although our resolution of the first issue does not require our resolution of the second, we briefly address the work product issue. The defendants' work product argument is directed at the final sentence of the first paragraph in Clarno's report. They maintain that because this sentence is a mental impression or opinion, it is exempt from disclosure without any consideration of Doehne's need for the information.

Work product refers to documents prepared in anticipation of litigation. *Soter v. Cowles Pub'g Co.*, 131 Wn. App. at 882, 893. 130 P.3d 840 (2006), *aff'd*, 162 Wn.2d 716, 174 P.3d 60 (2007). It consists of factual information and mental impressions, research, legal theories, opinions and conclusions. *Soter*, 131 Wn. App. at 893. The court may allow a party to discover factual information prepared in anticipation of litigation upon a showing of substantial need for the materials in preparing the party's case and an inability to obtain the substantial equivalent without undue hardship. CR 26(b)(4); *Heidebrink v. Moriwaki*, 104 Wn.2d 392, 395, 706 P.2d 212 (1985). Opinion work product, however, enjoys nearly absolute immunity, and a court may release it only in very rare and extraordinary circumstances. CR 26(b)(4); *Soter*, 131 App. at 894. Mental impressions embedded in factual statements should be redacted. *Limstrom v. Ladenburg*, 136 Wn.2d 595, 612, 963 P.2d 869 (1998).

Work product documents need not be prepared personally by counsel; they can be prepared by or for the party or the party's representative as long as they are prepared in anticipation of litigation. CR 26(b)(4); *Soter*, 131 Wn. App. at 894. There is an exception to the work product rule for records created during the ordinary course of business. *In re Det. of West*, 171 Wn.2d 383, 405, 256 P.3d 302 (2011). This exception prevents parties from exploiting the work product rule

by adopting routine practices whereby all documents appear to be prepared in anticipation of litigation. *Heidebrink*, 104 Wn.2d at 400.

The trial court concluded that three of the four paragraphs in the Clarno report were prepared in anticipation of litigation. Doehne does not challenge this conclusion. We question whether paragraphs in a single document can be prepared for different purposes. Nevertheless, we turn to Doehne's argument that the Clarno report was prepared in the ordinary course of business and thus is exempt from work product protection.

To identify "ordinary course of business" documents, we look at the parties involved and their expectations. *Soter*, 131 Wn. App. at 896; *see also West*, 171 Wn.2d at 405 (test is whether, in light of the document and the facts, the document can fairly be said to have been prepared or obtained because of the prospect of litigation). Here, Clarno prepared a report about Doehne's accident for distribution to the company's risk management and legal departments. This document would not have been prepared but for Doehne's injuries. The lawyers' participation was not merely incidental, and Empres' anticipation of potential litigation was reasonable. *See Cleveland Clinic Health Sys.*, 283 F.R.D. at 369 (plaintiffs' anticipation of litigation was objectively reasonable where patient was admitted to emergency room, was not fully connected to monitoring system, and was found dead the next day).

We conclude that the entire Clarno report was prepared in anticipation of litigation and that the trial court abused its discretion in compelling the discovery of the final sentence of the first paragraph, which clearly constitutes opinion work product. And, as stated, the entire first

paragraph is protected from disclosure by the attorney-client privilege.

We reverse the trial court's order compelling discovery of this information.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, P.J.

Sutton, J.