# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| PAYTON O. HOFF,<br><br>      Respondent,<br><br>  v.<br><br>SAFECO INSURANCE COMPANY OF ILLINOIS,<br><br>      Appellant. | No.  50850-8-II<br><br>ORDER GRANTING MOTIONS<br>TO PUBLISH OPINION |

The parties in this case move to publish the opinion filed in this matter on May 29, 2019. After review, it is hereby

ORDERED that the final paragraph, which reads as follows, shall be deleted:  "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered."  It is further

ORDERED that this opinion is now published.

Panel:  Worswick, Maxa, Glasgow

FOR THE COURT:

_____
  MAXA, C.J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PAYTON O. HOFF, | No. 50850-8-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| SAFECO INSURANCE COMPANY OF ILLINOIS, | |
| Appellant. | |

GLASGOW, J. — Payton Hoff was a passenger in a vehicle that was hit by a drunk driver. She received a settlement from the at-fault driver's insurer and personal injury protection payments from Safeco Insurance. She then made an underinsured motorist claim with Safeco. Hoff objected to Safeco's low offers of settlement and eventually filed a complaint in superior court alleging unfair claims settlement practices and bad faith.

After some discovery, Safeco removed the suit to federal district court on the basis of diversity jurisdiction. The federal court remanded to the superior court, finding that the required minimum amount in controversy had not been established.

On remand, Hoff argued that Safeco's removal attempt itself supported the bad faith claim, and she moved to compel Safeco to produce all information the company or its attorneys possessed concerning the decision to remove her superior court lawsuit to federal court. The superior court granted the motion to compel and ordered Safeco to produce for in camera review all information—including attorney-client privileged materials and work product—concerning

No. 50850-8-II

Safeco's decision to remove the case to federal court. We granted Safeco's motion for discretionary review.

Under the facts of this case, information about Safeco's decision to remove the case to federal court is not discoverable under *Richardson v. GEICO*, a case decided after the superior court made its ruling here. 200 Wn. App. 705, 403 P.3d 115 (2017), *review denied*, 190 Wn.2d 1008 (2018). In addition, under *Cedell v. Farmers Insurance Co.*, in order to pierce the attorney-client privilege and attorney work product protections, a party seeking protected information must make a factual showing adequate to support a reasonable good faith belief that the party's conduct was fraudulent. 176 Wn.2d 686, 295 P.3d 239 (2013). This is a high bar and Hoff fails to meet it here.

We reverse the superior court's order compelling discovery and remand for further proceedings.

FACTS

A.     Accident and Underinsured Motorist Claim

In May 2011, a drunk driver drifted across the center line and collided head on with a vehicle in which Hoff was a passenger. Hoff sustained multiple soft tissue injuries. The drunk driver died. Safeco insured the vehicle and provided personal injury protection and underinsured motorist (UIM) coverage to Hoff.

The drunk driver's insurer settled Hoff's bodily injury claim for the policy limit of $25,000. Safeco also paid over $15,000 in personal injury protection benefits.[1]

---

[1] Personal injury protection coverage applies regardless of fault, and provides benefits for claims involving medical and hospital expenses, wage loss, loss of services, and funeral expenses.

2

No. 50850-8-II

Hoff subsequently filed a UIM bodily injury claim with Safeco.[2] The UIM bodily injury coverage had a policy limit of $50,000.

Throughout Safeco's claim investigation, Hoff reported ongoing neck, back, shoulder, and hip pain. She also reported that she was experiencing emotional trauma. Hoff continued to seek and receive chiropractic and other medical care and anticipated she would need ongoing care into the future.

Safeco completed a bodily injury evaluation and offered Hoff $2,500 to settle her UIM claim. Hoff rejected the offer and demanded $100,000, which was double the UIM policy limit. Safeco replied that they would be at an impasse until Hoff countered with a more reasonable demand.

Hoff filed a complaint in superior court. She alleged that Safeco had violated WAC 284-30-330(a)(7), which prohibits an insurance company from forcing a claimant to litigate by offering substantially less than the amounts ultimately recovered in the proceeding. She also relied on RCW 48.30.010(7) and the Insurance Fair Conduct Act, chapter 48.30 RCW.[3] Hoff alleged that her damages "far exceed[ed] Safeco's available UIM limits." Clerk's Papers (CP) at 4. Hoff's prayer for relief requested "judgments for general and special damages, all in such

---

[2] UIM coverage provides compensation when the insured is injured by another driver whose bodily injury liability coverage is insufficient to fully compensate the injured person.

[3] The complaint and amended complaint cite to RCW 48.40.010(7), but that provision appears to be part of an unrelated chapter that has been repealed. RCW 48.30.010(7) prohibits insurance companies from unreasonably denying claims made by first party claimants, including people claiming they are entitled to payment as a covered person under an insurance policy. RCW 48.30.010(7), .015(4).

amounts as will be proven at time of trial herein" and "other relief as to the Court seems fair, just, and equitable." CP at 5.

B.        Amount in Controversy

Safeco propounded its first set of discovery requests. In answering Safeco's requests for admission, Hoff denied that the total amount of her damages payable by Safeco exceeded $75,000. She also denied that Safeco "[had] any exposure to pay [her] in excess of $75,000." CP at 69.

In her answers to Safeco's first interrogatories and requests for production, Hoff claimed that her special medical damages totaled at least $12,455, not including $4,733 of other medical bills, and that she anticipated she would require future medical care. She claimed that "[g]eneral damages are unknown at this time[,] . . . [but] the value is $75,000 exclusive of the third party recovery." CP at 63. When asked whether she sought a trebling or any multiplier of damages, she responded, "Yes. Both general and special damages. The amounts will be determined by a jury based upon the longevity of symptoms, their severity and the manner in which [Hoff's] claim was treated by defendant Safeco through its employees and practices." CP at 64. Hoff also asserted that "[i]n the event of a determination that [the Insurance Fair Conduct Act] was violated," she planned to "seek punitive damages in an amount a finder of fact deems appropriate." CP at 64.

Although the amount in controversy had the potential to exceed $75,000, Hoff acknowledged that she was disinclined to litigate in federal court. Therefore, she offered to sign a CR 2A stipulation that the amount in controversy did not exceed $75,000. Nevertheless, she maintained that the jury could award her an "aggregate verdict" of far more than $75,000, but

4

that Safeco could not be required to pay anything greater than $75,000. CP at 1301. Safeco

proposed the following CR 2A stipulation language:

> 1. Now, therefore, Plaintiff and Safeco stipulate that the sum total of all monetary relief that Plaintiff will seek in this action, whether costs, attorney's fees, expert expenses or otherwise, is $75,000.00 or less.
>
> 2. Plaintiff and Safeco further stipulate to the entry of an order in limine that limits Plaintiff from seeking any monetary relief in this action, damages, attorney's fees, costs, or otherwise, in excess of $75,000.

CP at 567.

Hoff agreed to the proposed language in paragraph 1 of Safeco's CR 2A stipulation, but

not the language in paragraph 2. Hoff suggested the following language for paragraph 2:

> 2. However, admissible evidence that a trier of fact may consider is not subject to an order in limine. In the event a trier of fact values Plaintiff's claim at more than $75,000, Plaintiff and Safeco agree no money judgment may exceed $75,000.

CP at 510.

The parties exchanged follow-up letters regarding the proposed CR 2A stipulation

language, but could not reach an agreement. Because Hoff retained the right to claim damages

greater than $75,000, Safeco warned that if Hoff would not agree to its proposed language it

would remove the suit to federal court, stating, "A willingness to 'waive' the right to seek relief

greater than $75,000 to avoid removal to federal court, while retaining the right to *claim*

damages over that amount is inconsistent with a stipulation that the amount in controversy is

$75,000 or less." CP at 572. Hoff explained that she would not limit her trial testimony by

stipulating to an order in limine, as Safeco proposed, but reiterated that she would neither seek,

nor accept, a judgment of more than $75,000, in the event it was awarded. Hoff also countered

that if Safeco removed the suit to federal court, she would seek remand.

C.    <u>Removal to Federal Court and Remand</u>

Because Hoff refused to stipulate that she would not ask the jury to award her monetary relief "in excess" of $75,000, Safeco removed the suit to federal court under 28 U.S.C. § 1441. Br. of Pet'r at 8; CP at 634. Safeco argued that the federal court had diversity jurisdiction under 28 U.S.C. § 1332. The parties were citizens of different states. And Safeco claimed the matter in controversy exceeded $75,000 because Hoff might seek more than $75,000 from the jury, even if she was willing to agree not to ultimately accept a judgment over $75,000.

Hoff moved for remand. The federal court granted Hoff's motion and explained that Safeco could not insist on limiting the evidence before the jury. But the federal court also made it clear that Hoff could not seek recovery in excess of $75,000 from the jury. The court observed that "prior to removal, a plaintiff can effectively avoid removal on diversity grounds by agreeing not to seek or recover more than the jurisdictional minimum, regardless of what the fact finder thinks of her evidence." CP at 645. The court concluded that "Hoff's unilateral act [of limiting her recovery] is sufficient to deny this court jurisdiction. It does limit her recovery to less than $75,000, and it does prohibit her from seeking—from asking the jury for—more." CP at 646.

D.    <u>Hoff's Discovery Request Regarding Removal Decision</u>

On remand, Hoff propounded the following interrogatory:

<u>INTERROGATORY NO. 5:</u>

>    Please explain every reason Safeco had for removing Ms. Hoff's suit against
>    Safeco to federal court in Tacoma.

CP at 652. Safeco objected and declined to answer, arguing in part that Hoff was seeking information protected by the attorney-client privilege and the attorney work product doctrine

because Hoff was seeking an explanation of litigation strategy. Following a discovery conference, Safeco declined to withdraw its objections and still refused to answer.

Hoff moved to compel Safeco's answer. In her motion, Hoff claimed that Safeco acted in bad faith when it removed the lawsuit to federal court and that the fraud exception to the attorney-client privilege entitled her to discovery. Hoff asserted that the requested documents "would be relevant to a jury in deciding the fact question of whether [she] was treated unfairly and in bad faith." CP at 1223-24. Hoff argued Safeco's "[r]emoval of this matter to federal court for tactical reasons" was tantamount to civil fraud. CP at 1227.

Finally, Hoff requested sanctions, explaining that the superior courts have broad power to fashion sanctions for litigation conduct if the court finds bad faith. But then, Hoff limited her sanctions request "for the necessity of Plaintiff having to bring this motion to compel discovery." CP at 1235.

The superior court conducted a hearing on the motion to compel. Hoff argued that Safeco's litigation conduct could be the basis for, and evidence of, insurance bad faith, which was why she sought to pierce the attorney-client privilege regarding Safeco's removal decision. Safeco disagreed and argued that litigation conduct could not form the basis for an insurance bad faith claim in the UIM context. Instead, Safeco contended, the civil rules and the rules of professional conduct govern attorney conduct throughout litigation. Safeco also asserted that there was no evidence of civil fraud sufficient to pierce the attorney-client privilege and work product protections in this case.

The superior court recognized in its oral ruling that although

> we're running into litigation strategy, attorney-client privilege, [and] attorney work product[,] . . . my instruction is to answer the interrogatory, create a privilege log,

7

> submit anything that's in the privilege log for in camera review, and where it goes from there, we'll decide.

1 Verbatim Report of Proceedings (VRP) at 33-34. The court did not expressly address whether the fraud exception had been met. The superior court noted, however, that the federal court had simply ignored Safeco's request for attorney fees rather than expressly denying them; so, it determined that it could not draw any conclusions about whether the federal court found the removal unreasonable.

At a later hearing concerning the specific language of the order, the superior court clarified that Safeco must provide "each and every reason [the suit] was removed to Federal Court." 2 VRP at 46. "Safeco has to provide everything . . . that's responsive to the interrogatory. If they think it's privilege[d], put it in the log." 2 VRP at 49. The superior court denied Hoff's request for sanctions and/or attorney fees.

Safeco moved for reconsideration. The superior court denied the motion, stating:

> The written decision of the federal court dismissing the federal filing, and the reasons given for that dismissal, give[] rise to a factual showing sufficient [to support] a reasonable belief of wrongful conduct sufficient to amount to fraud. In response Safeco has offered no legitimate reason whatsoever for the removal of this case to federal court.

CP at 850.

E.    Discretionary Review

Safeco sought discretionary review of the orders compelling it to provide answers concerning its removal strategy.[4] Soon after, we issued *Richardson*, holding that strategy related

---

[4] Although Hoff also discusses facts related to events following its motion for discretionary review, we find these facts to be irrelevant to the resolution of the issues presented, whether the superior court's order on the motion to compel and order on reconsideration were in error.

materials created after UIM litigation has begun are not discoverable. 200 Wn. App. 705. Our commissioner granted discretionary review.

ANALYSIS

MOTION TO COMPEL DISCOVERY OF SAFECO'S LITIGATION STRATEGY

Safeco argues that the superior court erred when it ordered Safeco to produce information concerning its decision to remove the suit to federal court because that is exclusively litigation strategy and is protected by attorney-client privilege and the attorney work product doctrine. Safeco also argues the superior court erred when it concluded on reconsideration that the evidence supported the reasonable belief that Safeco committed civil fraud when it removed the suit to federal court, thereby allowing Hoff to pierce the attorney-client privilege. We agree.

A.      Standard of Review

We review a superior court's discovery ruling for abuse of discretion. *Cedell*, 176 Wn.2d at 694. We will reverse a discovery ruling "only 'on a clear showing' that the court's exercise of discretion was 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Id*. (quoting *T.S. v. Boy Scouts of Am.*, 157 Wn.2d 416, 423, 138 P.3d 1053 (2006)). A superior court's decision is based on untenable reasons if it applies the wrong legal standard. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006). We review questions of law de novo, and a superior court necessarily abuses its discretion if it based its discovery ruling on an erroneous view of the law. *Id*.

B.      Attorney-Client Privilege and Work Product Doctrine in UIM Bad Faith Cases

Civil Rule 26 sets out the general rules governing discovery, and "[t]he scope of discovery is very broad." *Cedell*, 176 Wn.2d at 695. The rule allows parties to obtain discovery

regarding any nonprivileged matter that is relevant to the subject matter involved in the pending action. CR 26(b)(1).

Yet an attorney must not, without the consent of their client, reveal any communication from the client or the advice the attorney has given. RCW 5.60.060(2)(a). The attorney-client privilege exists to encourage free and open communication without fear of later disclosure. *Cedell*, 176 Wn.2d at 698. The protection covers information generated by a request for legal advice, including documents clients have created for purposes of communicating with their attorneys. *Doehne v. EmpRes Healthcare Mgmt., LLC*, 190 Wn. App. 274, 281, 360 P.3d 34 (2015); *see also Soter v. Cowles Pub'g Co.*, 162 Wn.2d 716, 745, 174 P.3d 50 (2007). But the privilege does not protect documents created or facts gathered for another purpose. *Doehne*, 190 Wn. App. at 281. The party asserting the privilege has the burden to prove the privilege applies. *Id.*

The attorney work product doctrine applies to documents and other things prepared in anticipation of litigation. *Id.* at 283-84. Under CR 26(b)(4), "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." This type of work product is almost never disclosed, and a court may release it only in extraordinary circumstances. *Doehne*, 190 Wn. App. at 283-84 (citing CR 26(b)(4)); *see also*, *Soter*, 162 Wn.2d at 739, 757-58 (plurality opinion, followed by Justice Madsen's concurrence and agreement with the plurality's analysis) ("Thus, privileged information and a legal team's mental impressions, conclusions, opinions, or theories are almost always exempt from discovery, regardless of the level of need."). In contrast, a court may require the disclosure of purely factual information gathered in anticipation of

litigation if the opposing party can show a substantial need to prepare the party's case and an inability to obtain the information elsewhere without undue hardship. *Doehne*, 190 Wn. App. at 284.

Where insurance bad faith is at issue, the privilege and work product protections can be more limited. An insurance bad faith claim arises from an insurer's duty to act in good faith towards its insured. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 129-30, 196 P.3d 664 (2008). Typically, when an insured claims that their insurer denied coverage, made unreasonably low offers, or delayed payment in bad faith, there is a presumption against allowing the insurer to claim attorney-client privilege or work product to prevent disclosure of claim processing communications and records. *Cedell*, 176 Wn.2d at 696, 699-700. But the *Cedell* court also recognized that UIM cases are different from other insurance bad faith cases.

In UIM cases, parties contract directly with UIM insurers to provide an additional layer of compensation where the at-fault party has insufficient coverage. *See Fisher v. Allstate Ins. Co.*, 136 Wn.2d 240, 244, 961 P.2d 350 (1998). The UIM insurer "provides a second layer of excess insurance coverage that 'floats' on top of recovery from other sources for the injured party." *Id.* (quoting *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 87, 794 P.2d 1259 (1990)). As a result, the UIM insurer "steps into the shoes" of the at-fault insurer and may defend as the at-fault insurer would defend. *Cedell*, 176 Wn.2d at 697. Our Supreme Court recognized in *Cedell* that, in UIM bad faith cases, the insurance company "is entitled to counsel's advice in strategizing the same defenses that the tortfeasor could have asserted." *Id*.

In *Richardson*, we followed this reasoning and concluded that an insurer's discussions and documents about litigation strategy created during litigation in UIM cases, in contrast with

discussions and documents related to claims processing, are not discoverable. 200 Wn. App. at 715-16, 720. Richardson was injured in an auto accident, and the insurer for the at-fault driver settled Richardson's bodily injury claim for its $25,000 policy limit. *Id*. at 707. Richardson then sought UIM coverage and benefits from her insurer, GEICO, under her own policy. *Id*. When GEICO eventually denied her UIM benefits, Richardson sued, alleging that GEICO had acted in bad faith when it denied her claims. *Id*. at 708. She then propounded interrogatories and requests for production. *Id*. GEICO objected based on attorney-client privilege and the attorney work product doctrine. *Id*.

Richardson then moved to compel, arguing that GEICO had waived the attorney-client privilege. *Id*. Relying on *Cedell*, the superior court ordered GEICO to produce the responsive information and documents for in camera review. *Id*.

On appeal, we distinguished *Richardson* from *Cedell* because *Cedell* involved access to the claims file, where *Richardson* involved access to records and information developed during UIM litigation. *Id.* at 715-16. We concluded that "information generated post-litigation is not discoverable," and Richardson could not pierce the privilege and work product protections to obtain such information. *Id.* at 720-21. Allowing information and documents related to litigation strategy to be discoverable would not only be "contrary to the purposes of attorney-client privilege," but it would also have a "chilling effect" on an insurer's ability to defend itself against UIM claims. *Id.* We reasoned that litigation strategy decisions generally have "little bearing on" whether the insurance company's earlier claim processing occurred in bad faith. *Id.* We held the superior court, therefore, had abused its discretion when it ordered GEICO to produce information and documents created during litigation. *Id*.

Because we concluded that information and documents created during litigation were not discoverable, the *Richardson* decision did not analyze whether GEICO had presented evidence of actions tantamount to fraud sufficient to pierce the protections. *See id.* This reasoning is consistent with the work product principle that information about a party's litigation strategy, unlike factual information, is almost never discoverable. *Doehne*, 190 Wn. App. at 283-85 ("Opinion work product, however, enjoys nearly absolute immunity, and a court may release it only in very rare and extraordinary circumstances.").

In this case, privileged information and work product concerning Safeco's decision to remove the suit to federal court inescapably entails litigation strategy. Applying *Richardson*, we conclude that Safeco's litigation strategy was protected by attorney-client privilege and the attorney work product doctrine. The superior court therefore erred when it required Safeco to produce information and records related to its litigation strategy for in camera review.

Hoff relies on *Leahy v. State Farm Mutual Automobile Insurance Co.*, 3 Wn. App. 2d 613, 418 P.3d 175 (2018), to argue that the superior court had discretion to subject privileged materials to in camera review and determine whether there is a factual foundation for a finding of civil fraud. But there, the central issue was whether the superior court properly declined to order disclosure of records created before litigation began. *Id*. at 630. Significantly, the information Leahy sought involved valuations and settlement authority, not the reasoning behind a procedural strategy in litigation. *Id.* at 629 ("As we read *Richardson*, had Leahy sought any materials that were prepared after she commenced this action . . . they would have been protected."). Under CR 26(b)(4), legal theories and legal strategy are almost always exempt from discovery, regardless of level of need. *Soter*, 162 Wn.2d at 739.

13

We conclude that Safeco's attorneys' mental impressions, theories, and litigation strategies are not discoverable.

C.      In Any Event, Hoff Failed to Make a Factual Showing Adequate To Pierce Attorney-Client Privilege and Attorney Work Product

The superior court required Safeco to produce the answer to interrogatory 5 and related documents because it concluded Hoff produced enough facts to give rise to a reasonable belief that civil fraud occurred. We hold that the superior court abused its discretion in this regard.

In UIM claims, we do not presume that the insurer has waived attorney-client privilege. *Cedell*, 176 Wn.2d at 697. Instead, attorney-client privilege may be pierced, for example, by establishing the bad faith civil fraud exception. *Id*. The civil fraud exception is established by a two-step test. First, the court determines "'whether there is a factual showing adequate to support a good faith belief by a reasonable person that wrongful conduct sufficient to [in]voke the fraud exception has occurred.'" *Id*. at 698 (quoting *Barry v. USAA*, 98 Wn. App. 199, 206, 989 P.2d 1172 (1999). If so, the superior court then reviews privileged or work product information and documents in camera "to determine whether there is a foundation in fact for the charge of civil fraud." *Cedell*, 176 Wn.2d at 698. Whether to require in camera review is a matter of discretion. *Id*.

In her motion to compel, Hoff argued that Safeco's "[r]emoval of this matter to federal court for tactical reasons" was tantamount to civil fraud and met the standard for triggering in camera review. CP at 1227. But we conclude that the record is devoid of any evidence to support a reasonable good faith belief that Safeco's removal of the case to federal court was not a legitimate, if unsuccessful, strategy.

14

After negotiations came to an impasse, Safeco removed the lawsuit to federal court under 28 U.S.C. § 1441. In its removal pleadings, Safeco provided the federal court with an analysis that calculated why it believed the matter in controversy exceeded the $75,000 requirement. Although the federal court ultimately remanded the lawsuit to the superior court, the court's decision did not suggest that Safeco acted improperly when it removed. In fact, the court said, "The parties raise a new spin on a fairly settled line," reflecting that the arguments were not wholly without merit. CP at 645. The court held that "Hoff's unilateral act [of limiting her recovery] is sufficient to deny this court jurisdiction." CP at 646.

The federal court also required Hoff to refrain from seeking more than $75,000 where she had been inconsistent in her statements about whether she planned to ask the jury for more. "It does limit her recovery to less than $75,000, and it does prohibit her from seeking—from asking the jury for—more." CP at 646. The court did not award Hoff attorney fees, although it had authority to do so under 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). We hold the superior court abused its discretion when it concluded that Safeco's removal to federal court, without more, was sufficient to trigger in camera review of its litigation strategy under the first prong of the *Cedell* test.

Hoff asserted in the superior court that the requested information and documents about litigation strategy "would be relevant to a jury in deciding the fact question of whether Ms. Hoff was treated unfairly and in bad faith." CP at 1223-24. On appeal, Hoff argues for the first time that Safeco's removal to federal court warrants court imposed sanctions and attorney fees. Even though she did not raise this issue below, under RAP 2.5, a party may "present a ground for

15

affirming a trial court decision which was not presented to the trial court if the record has been sufficiently developed to fairly consider the ground." RAP 2.5(a).

Hoff cites a number of cases involving "procedural bad faith," "sanctions," the superior court's "inherent authority to control litigation," "vexatious conduct during the course of litigation," and "frivolous defense strategies." Br. of Resp't at 12-13, 24-25. Procedural bad faith is not unique to insurance bad faith cases; it is unrelated to the merits of the case and refers to "vexatious conduct during the course of litigation," such as delaying or disrupting proceedings. *Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 784, 275 P.3d 339 (2012). We have recognized that the typical remedy for procedural bad faith is sanctions under the superior court's inherent authority. *Hedger v. Groeschell*, 199 Wn. App. 8, 13-14, 397 P.3d 154 (2017).

But Hoff did not connect her argument for in camera review in the superior court to a particular motion for sanctions for Safeco's removal, nor did she request that the superior court award attorney fees for addressing the removal. Because attorney theories, opinions, and litigation strategies are almost never discoverable, *Soter*, 162 Wn.2d at 739, we are skeptical that in camera review would be warranted to evaluate further whether Safeco's removal was sanctionable. Nevertheless, because the superior court did not have an opportunity to evaluate the motion to compel in light of a specific motion for attorney fees or sanctions for Safeco's removal, we hold that the record is not developed enough to resolve this new argument.

CONCLUSION

Litigation strategy is almost never discoverable and Safeco's litigation strategy in this UIM case is not discoverable here. And Hoff has failed to meet the high bar for piercing the attorney-client privilege and attorney work product protections. We therefore reverse and remand.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Worswick, J.

Maxa, C.J.

17