[Cite as *Spurgeon v. Mercy Health-Anderson Hosp., L.L.C.*, 2020-Ohio-3099.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| AUDRA SPURGEON, | : | APPEAL NO. C-190271 |
| | | TRIAL NO. A-1607043 |
| and | : | |
| | | *O P I N I O N.* |
| RICHARD SPURGEON, | : | |
| Plaintiffs-Appellees, | : | |
| vs. | : | |
| MERCY HEALTH—ANDERSON | : | |
| HOSPITAL, LLC, | | |
| | : | |
| Defendant-Appellant, | | |
| | : | |
| and | | |
| | : | |
| CINCINNATI CHILDREN'S | | |
| HOSPITAL MEDICAL CENTER, et al., | : | |
| Defendants. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: May 27, 2020

*The Lawrence Firm, P.S.C.*, *Richard D. Lawrence*, *Jennifer L. Lawrence* and *Lindsay A. Lawrence*, and *T. David Burgess Co., LPA*, *T. David Burrgess* and *Kristopher Burgess*, for Plaintiffs-Appellees,

*Rendigs, Fry, Kiely & Dennis, LLP*, *C. Jessica Pratt* and *Thomas M. Evans*, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1} Defendant-appellant Mercy Health—Anderson Hospital, LLC, ("Mercy") appeals the decision of the Hamilton County Court of Common Pleas ordering it to turn over documents to plaintiffs-appellees Audra and Richard Spurgeon that it claimed were confidential under the peer-review privilege. We find no merit in Mercy's sole assignment of error, and we affirm the trial court's judgment.

{¶2} The record shows that the Spurgeons individually, and as the parents of Blake Spurgeon, filed a medical-malpractice action against Mercy and several other defendants. They alleged that Mercy's nurses, physicians, and other health care providers failed to properly diagnose and treat their newborn son's case of severe meningitis, causing him to suffer permanent brain damage.

{¶3} During discovery, the Spurgeons attempted to obtain the complete employee files of several nurses employed by Mercy. Mercy refused to provide them, claiming that they were confidential under the peer-review privilege. Consequently, the Spurgeons filed a motion to compel discovery. In response, Mercy filed a motion for a protective order.

{¶4} Originally, the trial court granted the Spurgeons' motion to compel and ordered Mercy to provide all of the requested employee files. Mercy filed a motion for reconsideration asking the court to conduct an in camera inspection of the disputed documents. The trial court granted the motion for reconsideration.

{¶5} Following an in camera inspection of the documents, the trial court found that "the information sought by [the Spurgeons] was not information or records that were produced strictly for the use of or by a peer review committee. Instead, the employee information sought is discoverable information from the

original source that is Mercy Health—Anderson Hospital." Because Mercy had failed to meet its burden to show that the documents were privileged, the court ordered it to turn the documents over to the Spurgeons. This appeal followed.

{¶6} In its sole assignment of error, Mercy contends that the trial court erred by ordering the production of "nursing evaluations, competencies and corrective forms." It argues that those documents were created by nursing peers for the sole purpose of quality control, and they are, therefore, privileged and confidential under the peer-review statutes. The assignment of error is not well taken.

{¶7} Generally, we apply an abuse-of-discretion standard to the review of discovery orders. But because the trial court's discovery order involved the application or construction of statutory law regarding privilege, we review the order de novo. *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 13; *Flynn v. Univ. Hosp., Inc.*, 172 Ohio App.3d 775, 2007-Ohio-4468, 876 N.E.2d 1300, ¶ 4 (1st Dist.). The party asserting the privilege bears the burden to show that the privilege applies. *Watkins v. Good Samaritan Hosp. of Cincinnati, Ohio*, 1st Dist. Hamilton No. C-160194, 2016-Ohio-7458, ¶ 13. Simply labeling a document "peer review" or "privileged" does not invoke the statutory privilege. *Bansal v. Mt. Carmel Hosp. Systems, Inc.*, 10th Dist. Franklin No. 09AP-351, 2009-Ohio-6845, ¶ 14; *Selby v. Fort Hamilton Hosp.*, 12th Dist. Butler No. 2007-o5-126, 2007-Ohio-2413, ¶ 14.

{¶8} R.C. 2305.252(A) provides in pertinent part,

Proceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action

against a health care entity or health care provider, including both individuals who provide health care and entities that provide health care, arising out of matters that are the subject of evaluation and review by the peer review committee.

{¶9} The purpose of the statute is to protect the integrity and confidentiality of the peer-review process so that health care entities have the freedom to meaningfully review and critique the overall quality of the health care services they provide. *Cousino v. Mercy St. Vincent Med. Ctr.*, 2018-Ohio-1550, 111 N.E.3d 529, ¶ 15 (6th Dist.); *Smith v. Cleveland Clinic*, 197 Ohio App.3d 524, 2011-Ohio-6648, 968 N.E.2d 41, ¶ 11 (8th Dist.). The statute is designed to protect individuals who provide information without fear of reprisal and to protect the free exchange of information. *Smith* at ¶ 11.

{¶10} The statutes are not designed to hinder civil lawsuits. The peer-review privilege is "not a generalized cloak of secrecy" over the entire peer-review process. *Smith* at ¶ 11; *Giusti v. Akron Gen. Med. Ctr.*, 178 Ohio App.3d 53, 2008-Ohio-4333, 896 N.E.2d 769, ¶ 14 (9th Dist.). "If all materials viewed and utilized by review committees were deemed undiscoverable, a hospital could never be held accountable for any negligent act with the purview of the committee." *Smith* at ¶ 11, quoting *Huntsman v. Aultman Hosp.*, 5th Dist. Stark No. 2006 CA 00331, 2008-Ohio-2554, ¶ 47.

{¶11} Because the peer-review privilege is in derogation of common law, it is strictly construed against those seeking to invoke it. *Watkins*, 1st Dist. Hamilton No. C-160194, 2016-Ohio-7458, at ¶ 15; *Smith* at ¶ 9. The party resisting discovery has a two-part burden. *Cousino* at ¶ 16; *Smith* at ¶ 9. First, the health care entity must establish the existence of a peer-review committee as defined by R.C. 2305.25(E).

*Cousino* at ¶ 16; *Smith* at ¶ 15; *Bansal*, 10th Dist. Franklin No. 09AP-351, 2009-Ohio-6845, at ¶ 15. Second, the health care entity must prove that each of the documents that it refuses to produce is a record within the scope of the peer-review committee. *Cousino* at ¶ 16; *Bansal* at ¶ 15. "At a bare minimum, the party claiming the privilege must show that such a committee existed and that the committee investigated the case in question." *Flynn*, 172 Ohio App.3d 775, 2007-Ohio-4468, 876 N.E.2d 1300, at ¶ 11.

{¶12} To meet this burden, the health care entity may (1) submit the disputed documents to the trial court for an in camera inspection, or (2) present affidavit or deposition testimony containing the information necessary for the trial court to determine whether the privilege attaches. *Cousino*, 2018-Ohio-1550, 111 N.E.3d 529, at ¶ 16; *Bansal* at ¶ 14. If the health care entity satisfies its burden, the requested documents are unconditionally privileged and immune from discovery. *Cousino* at ¶ 16.

{¶13} R.C. 2305.25(E)(1)(a) defines "peer review committee" as

a utilization review committee, quality assessment committee, performance improvement committee, tissue committee, credentialing committee, or other committee that * * * [c]onducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health-care providers, including both individuals who provide health care and entities that provide health care.

A peer-review committee includes "[a] board or committee of a hospital * * * when reviewing professional qualifications or activities of health care providers, including both individuals who provide health care and entities that provide health care," or

5

"[a]ny other peer review committee of a health care entity." R.C. 2305.25(E)(2)(c) and (k).

{¶14} There are two general categories of documents that are considered records within the scope of the peer-review committee. First, any documents that are generated by or exclusively for the peer-review committee are protected from disclosure. *Cousino* at ¶ 23. "R.C. 2305.232 implicitly extends full and unconditional protections to records generated by the 'non-original source,' i.e., the peer review committee." *Bansal*, 10th Dist. Franklin No. 09AP-351, 2009-Ohio-6845, at ¶ 17.

{¶15} Second, R.C. 2305.232 protects any documents that are maintained in the peer-review committee's records that were generated by an "original source," a source other than the peer-review committee itself, and then presented to a peer-review committee. *Cousino*, 2018-Ohio-1550, 111 N.E.3d 529, at ¶ 24. R.C. 2305.232 states,

> Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were produced or presented during proceedings of a peer review committee, but the information, documents, or records are available only from the original sources and cannot be obtained from the peer review committee's proceedings or records.

{¶16} The records and proceedings of the peer-review committee are not coextensive with all the records of the facility in which the committee operates. *Large v. Heartland-Lansing of Bridgeport Ohio, LLC*, 2013-Ohio-2877, 995 N.E.2d 872, ¶ 35 (7th Dist.). It is possible for the health care entity itself to be an original

source. *Cousino* at ¶ 28; *Large* at ¶ 35. Documents that are accessible to the staff of the facility separate and apart from any role on a review committee are not protected by the privilege. *Large* at ¶ 39. A health care entity "cannot shield documents from disclosure just by circulating them during peer review proceedings." *Bansal* at ¶ 16, fn. 3.

{¶17} Mercy's arguments fail for a number of reasons. First, although peer-review committees can go by many names, Mercy failed to show that it even had a peer-review committee for nurses.

{¶18} Mercy presented the affidavit of Shawna Straub. Straub stated that Mercy had a "quality-assessment process applicable to the nursing staff," which involved "the regular review and evaluation of each nurse" performed by a "committee that typically consists of a nurse manager, nurse supervisor and/or a nursing peer." That "quality improvement process" includes the "assessment of nurses by way of evaluations, competencies and disciplinary/corrective actions" as reflected in the documents Mercy claims are privileged.

{¶19} Straub further stated that "[t]he purpose of each evaluation, competency and disciplinary/corrective action of the nurses at Mercy Anderson is to assess and improve the quality of care provided by those nurses." She added, "Nursing evaluations, competencies and disciplinary/corrective actions are created by and for nurses, and are used within the scope of and for the exclusive purpose of fulfilling the peer review and quality improvement duties." Nothing in Straub's affidavit actually establishes there was a peer-review committee for nurses or that it reviewed this particular incident.

{¶20} Evidence that a health care facility has a quality assurance program does not meet its burden to establish that it had a peer-review committee. *See*

*Fravel v. Columbus Rehab. & Subacute Inst.*, 2016-Ohio-5807, 70 N.E.3d 1161, ¶ 18-19 (1oth Dist.); *Giusti*, 178 Ohio App.3d 53, 2008-Ohio-4333, 896 N.E.2d 769, at ¶ 24-26. Merely labeling a committee "peer review" is insufficient to prove that the privilege applies. *Fravel* at ¶ 17; *Smith*, 197 Ohio App.3d 524, 2011-Ohio-6648, 968 N.E.2d 41, at ¶ 23.

{¶21} Second, even if Mercy had a peer-review committee, nothing in the record shows that a peer-review committee ever investigated the case in question. There is no reference to the Spurgeon case at all in any of the disputed documents.

{¶22} Third, Mercy failed to meet its burden to show that the disputed documents were generated exclusively for a peer-review committee. As the trial court found, the documents were available from an original source.

{¶23} Attached to Straub's affidavit was a document entitled "Standards of Conduct and Performance (Corrective Action)," which is approved by the "Divisional Senior Vice President, Human Resources" for Catholic Health Partners, Central Division. In a heading, it identifies the "Responsible Party" and the "Department" as "Human Resources" and "Contributing Departments" as "Human Resources" and "General Practice." Though Straub refers to it as a "quality improvement process," the document sets forth a progressive disciplinary process. Nothing in the document indicates it is for the sole purpose of peer review.

{¶24} Further, the documents submitted to the trial court for the in camera review were documents obviously used by a human resources department. Interestingly, two of the documents Mercy claims were privileged have a signature line saying "Received in Human Resources."

{¶25} The trial court was correct in finding that the "original source" rule applies. Mercy's claim that documents had the potential of being used by a peer-

review committee is not sufficient to show that the documents are privileged. Mercy has failed t0 meet its burden to show that the documents were created exclusively for use by a peer-review committee, and therefore, it has failed to meet its burden to show that the documents were privileged. Because the documents came from an original source, i.e., Mercy's human resources department, the court correctly ordered Mercy to turn over the documents to the Spurgeons.

{¶26} In sum, Mercy has failed to meet its burden in any respect. It has failed to show that a peer-review committee existed, that a peer-review committee reviewed the Spurgeon case, and that the allegedly privileged documents were created exclusively for use by a peer-review committee. Therefore, we overrule its assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**BERGERON, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry this date.