IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 84204-8-I |
| Respondent/Cross-Appellant, | DIVISION ONE |
| v. | |
| JOSE LEONARDO COLINDRES, | UNPUBLISHED OPINION |
| Appellant/Cross-Respondent. | |

SMITH, C.J. — Jose "Leo" Colindres was charged with two counts of rape of a child in the first degree. He was convicted only on the first charge. On appeal, Colindres contends that the trial court erred by, (1) denying his motion for mistrial based on prosecutorial misconduct, (2) imposing both a victim penalty assessment and DNA collection fee, and (3) imposing community custody conditions that are not sufficiently related to his offense. Colindres also asserts that his counsel was ineffective for failing to request a limiting instruction following the use of impeachment evidence. He argues that an *in camera* review is necessary to determine if the trial court properly released all discoverable material to the defense, and finally, he asserts cumulative error. Finding no error concerning his conviction, we affirm but remand for the court to strike the victim penalty assessment, DNA collection fee, and community custody conditions.

## FACTS

Charlene Caceres and Edwin Hernandez met and began dating when they were 19 and 16 years old, respectively. They had four children together: two

daughters (N.C., A.C.), and two sons. N.C. is the oldest of those children; A.C. is the second oldest. Jose "Leo" Colindres is Caceres' brother and N.C.'s uncle.

Caceres and Hernandez briefly married but separated only a few weeks later. Following the separation, Caceres moved to California with the children and Hernandez stayed in Washington to work.

The living situation in California was crowded, and the four children shared one bed in their mother's room. Hernandez visited frequently. Caceres eventually agreed that the children could live with Hernandez for the summer. Colindres volunteered to chaperone the children on a Greyhound bus from California to Washington. N.C. was 10 years old when she moved to her father's home in Auburn. A.C. was eight years old.

In Hernandez's home, the children shared a room but each had their own bed. The girls shared bunkbeds and the boys each had a toddler "car bed." Colindres slept on the couch. By the end of the summer, the children did not want to return to California. It was ultimately decided that they would stay with Hernandez in Washington. Colindres volunteered to stay in Washington as well, offering to babysit the children while Hernandez worked. Hernandez left for work early, leaving Colindres in charge of getting the children ready for school and picking them up in the afternoon. As a result, Colindres was alone with N.C. for several hours most days.

N.C. testified that Colindres raped her four times while she lived in Washington. One incident occurred in her bedroom after Hernandez had left for work. She testified that Colindres woke her two younger brothers and moved

them to a different room before shutting the door, pulling N.C.'s pants down, and vaginally raping her. The motion roused A.C., who complained about the noise before falling back to sleep. After the rape, Colindres brought the two boys back to bed.

N.C. recalled another assault that took place in the afternoon. N.C. was alone with Colindres in the dining room while her siblings were upstairs. Colindres "made [N.C.] pull down [her] pants" and played a video on his phone, depicting "something a fourth grader shouldn't see." N.C. could not recall exactly what he showed her. Colindres then vaginally raped her. When he stopped, Colindres told N.C. to dress herself and went to the bathroom.

N.C.'s younger sister, A.C., testified that Colindres entered their bedroom on several occasions and made the boys leave. She described one occasion where Colindres climbed into N.C.'s bunk. She observed that Colindres's clothing was "halfway on" and his body was "moving up and down . . . on top of [N.C.]."

In October 2018, Hernandez's ex-girlfriend Kristina Nagle came over for dinner with her daughter, C.G. C.G. was treated "like another sister" by the family and was about two years older than N.C. During this visit, A.C. told C.G. about Colindres's abuse. C.G. told her mother, who then told Hernandez. Hernandez spoke with his daughters in private, and N.C. confirmed that Colindres had raped her.

Hernandez confronted Colindres with N.C.'s allegations, at which point both N.C. and Hernandez testified that Colindres began crying and said he "was

sorry that it happened." Hernandez immediately kicked Colindres out of the house and sent him back to California the next day. Hernandez did not initially report the abuse, concerned that CPS might remove the children, but contacted law enforcement several days later. Colindres was charged with two counts of first degree rape of a child.[1]

Colindres testified at trial. He acknowledged taking care of the children but categorially denied any sexual abuse. He also denied apologizing. He claimed that he was shocked and angry at the accusation; he also stated that he repeatedly told Hernandez to call law enforcement if Hernandez really believed N.C.

Caceres also testified. She understood the rape allegation but did not know any specifics. During cross-examination, the prosecutor asked Caceres about her experience being raped as a child. Caceres became visibly upset at these questions. The prosecutor also asked Caceres a number of questions about whether she was present while Colindres was babysitting, noting her lack of presence in the Washington home. At the end of questioning, the prosecutor stated that she was not there when Colindres assaulted her daughter. At that point, Caceres began crying.

The jury convicted Colindres on the first count of rape of a child, but acquitted him on the second. The court imposed a standard range indeterminate

---

[1] The incident in the bedroom was charged as count one. The incident in the dining room was charged as count two. At trial, N.C. also testified to a third incident where Colindres woke her up and instructed her to undress. She refused, and as punishment for disobeying, Colindres forced her to sleep on the floor. This was not separately charged.

sentence of 120 months to life in prison and lifetime community custody. Colindres appeals.

ANALYSIS

Motion for Mistrial

Colindres contends that the prosecutor committed misconduct by asking Caceres questions about being raped and that the trial court erred in failing to grant a mistrial based on that misconduct. We conclude that Colindres fails to establish that the prosecutor's conduct resulted in prejudice and thus, that the court did not err in denying the mistrial.

"The decision to deny a request for mistrial based on alleged prosecutorial misconduct lies within the sound discretion of the trial court, and it will not be disturbed absent an abuse of discretion." State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994). A trial court abuses its discretion in denying of a motion for mistrial if " 'no reasonable judge would have reached the same conclusion.' " State v. Emery, 174 Wn.2d 741, 765, 278 P.3d 653 (2012) (internal quotation marks omitted) (quoting State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)). A mistrial is appropriate " 'only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly. " State v. Rodriguez, 146 Wn.2d 260, 269, 45 P.3d 541 (2002) (quoting State v. Mak, 105 Wn.2d 692, 701, 718 P.2d 407 (1986)). The trial court is in the best position to determine prejudice. State v. Garcia, 177 Wn. App. 769, 777, 313 P.3d 422 (2013).

Here, Colindres argues that prosecutorial misconduct entitles him to a

mistrial. If a defendant objects to the conduct at trial, to show prosecutorial misconduct he must establish that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial. State v. Koeller, 15 Wn. App. 2d 245, 260, 477 P.3d 61 (2020). Conduct is prejudicial if the defendant can show a substantial likelihood that the error affected the jury verdict. State v. Molina, 16 Wn. App. 2d 908, 968, 485 P.3d 963 (2021).

In general, " 'when a party opens up a subject of inquiry on direct or cross-examination, [they] contemplate[] that the rules will permit cross-examination or redirect examination, as the case may be, within the scope of the examination in which the subject matter was first introduced.' " State v. Rushworth, 12 Wn. App. 2d 466, 473, 458 P.3d 1192 (2020) (emphasis omitted) (quoting State v. Gefeller, 76 Wn.2d 449, 455, 458 P.2d 17 (1969)). Therefore, such questioning is appropriate behavior. Rushworth, 12 Wn. App. 2d at 473. Conduct is not improper if a defendant cannot establish that conduct is unreasonable or inappropriate. Koeller, 15 Wn. App. 2d at 263. In contrast, conduct is improper if it appeals to the passions or prejudices of the jury, intending to incite anger or desire for revenge. State v. Elledge, 144 Wn.2d 62, 85, 26 P.3d 271 (2001).

Colindres alleges that the prosecutor committed misconduct by (1) asking Caceres a number of questions about her own assault as a child, and (2) repeatedly asking Caceres about being out-of-state while Colindres assaulted N.C. Colindres objected to both lines of questioning at trial.

The first instance was not improper conduct. Defense counsel introduced

6

the subject of Caceres's rape on direct examination. In an attempt to explain that N.C. understood the mechanics of sex from her mother's explanation, rather than personal experience, defense counsel elicited testimony that Caceres taught the girls about inappropriate touching as a response to her own assault. Defense counsel finished his direct examination on that topic. On cross-examination, the State followed up with questions about how Caceres's experience with sexual assault was the reason she talked to the girls about what to do if anyone touched them inappropriately. Because defense counsel first asked Caceres about this topic, the prosecutor's questions were within the scope of the subject matter as introduced and these questions did not constitute improper conduct.

As to the second instance, the conduct was improper and inappropriate, which the State concedes. The State acknowledges that the prosecutor's repeated questions about Caceres's absence were cumulative and unnecessarily provocative. The questions brought Caceres to tears and appear aimed at eliciting an emotional response from the jury. Because this line of questioning attempted to play on the passions and prejudices of the jury, it was inappropriate and constituted improper conduct. Colindres has established that the prosecutor's conduct was improper.

Although the questioning was improper, Colindres fails to establish prejudice. The questions that the prosecutor asked of Caceres were centered around the alleged assault in the dining room and the fact that she was out of the state when it happened. Colindres was acquitted on that charge. And while he alleges prejudice, Colindres received a favorable verdict on that charge.

7

Colindres cannot show that the outcome of the trial court would have been different absent the improper conduct.

Because Colindres was not prejudiced by the prosecutor's misconduct, the trial court did not abuse its discretion in denying a mistrial. Apart from his claim of prosecutorial misconduct, Colindres does not provide any other basis to support the motion for mistrial.

Comment on Pre-Arrest Silence

Colindres asserts that the prosecutor impermissibly commented on Colindres's exercise of his constitutionally protected right to pre-arrest silence and used it as substantive evidence of his guilt. As Colindres failed to raise this issue below, we decline to reach it.

1. Waiver

In general, we do not consider issues raised for the first time on appeal. RAP 2.5(a). And if an objection on one specific ground is overruled at trial, a party may not rest that objection upon a new ground on appeal. State v. Koepke, 47 Wn. App. 897, 911, 738 P.2d 295 (1987); State v. Pappas, 195 Wash. 197, 200-201, 80 P.2d 770 (1938).

At trial, Colindres objected to the prosecutor's statement that "Mr. Colindres himself never called the cops even though he said they should have been called" based on burden shifting. The court overruled Colindres's objection. On appeal, Colindres argues that this same statement was a violation of his Fifth Amendment right to silence. He asserts that "the objection was meant to convey that Colindres has no burden to come forward to speak with the police,

which implicates the right to remain silent." Relying on State v. Braham, 67 Wn. App. 930, 935, 841 P.2d 785 (1992), Colindres asserts that a claim is preserved for review if the specific ground for the objection is apparent from the context. But Braham is distinguishable.

In Braham, the defendant broadly objected to testimony as irrelevant. 67 Wn. App. at 935. Then, on appeal, the defendant argued that the probative value of the evidence was outweighed by its unfairly prejudicial impact. Id. The court held that the specific objection argued on appeal could be inferred from the context of the broader objection below. Id.

In contrast, here, Colindres argues a different basis for the objection on appeal than he did before the trial court. Before the trial court, Colindres objected based on burden shifting. On appeal, he contends the objection referenced his right to remain silent. These are entirely different objections. The prohibition on burden shifting stems from the Fourteenth Amendment rather than the Fifth Amendment. In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 713, 286 P.3d 673 (2012) (shifting burden of proof to the defendant is improper under Fourteenth Amendment); Patterson v. New York, 432 U.S. 197, 215, 97 S. Ct. 2319, 53 L. Ed. 2d 281, 97 S. Ct. 2319 (1977) ("shifting of the burden of persuasion . . . is impermissible under the Due Process Clause" of the Fourteenth Amendment). The latter cannot be inferred from the former. Because Colindres raised a different objection before the trial court, he cannot now raise an alternative basis for the objection on appeal.

9

2. Manifest Constitutional Error

In the alternative, Colindres asserts that he may raise this issue for the first time on appeal because it is a manifest constitutional error. We disagree.

"[M]anifest errors affecting a constitutional right may be raised for the first time on appeal." State v. A.M., 194 Wn.2d 33, 38, 448 P.3d 35 (2016); RAP 2.5(a)(3). To establish manifest constitutional error, the defendant has the burden of showing that (1) the error was "truly of constitutional dimension" and (2) the error was "manifest." If correct, an error is of constitutional dimension if "it implicates a constitutional interest as compared to another form of trial error." State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). We do not presume an alleged error is of constitutional magnitude. O'Hara, 167 Wn.2d at 98. An error is manifest if there is a " 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.' " A.M., 194 Wn.2d at 38 (quoting O'Hara, 167 Wn.2d at 99). A defendant may establish that an error has practical and identifiable consequence at trial if otherwise inaccessible evidence is admitted over the objection of counsel. A.M., 194 Wn.2d at 39.

As to the first prong, Colindres fails to show that the error was truly constitutional. Typically, a claim that someone impermissibly commented on prearrest silence would rise to a constitutional level. A.M., 194 Wn.2d at 39; State v. Curtis, 110 Wn. App. 6, 11, 13, 37 P.3d 1274 (2002). "The right against self-incrimination is liberally construed." State v. Easter, 130 Wn.2d 228, 236, 922 P.2d 1285 (1996). It might take the form of refusing to answer the police pre

10

or post-Miranda,[2] or simply not engaging prior to arrest. State v. Lewis, 130 Wn.2d 700, 705, 927 P.2d 235 (1996); Easter, 130 Wn.2d at 236; A.M., 194 Wn.2d at 39. And the right against self-incrimination is clearly of truly constitutional dimension.

In this case, however, the police were not involved. In fact, there was no investigation until days later. The conversation about calling the police occurred when Colindres was speaking with his former brother-in-law, in response to N.C. and A.C.'s accusation. To consider Colindres's choice not to call the police pre-arrest silence would be to stretch pre-arrest silence past its logical point, even before a report has been made to the police or the initiation of an investigation. We do not do so. Because the statement does not implicate Colindres's Fifth Amendment right, the error is not one of truly constitutional dimension.

Colindres also fails to satisfy the second prong because he does not demonstrate how the statement affected his rights at trial. Defense counsel, not the State, introduced the fact that Colindres told Hernandez to call the police. Colindres himself testified that "[he] told [Hernandez] to call the cops more than once." Defense counsel revisited the topic a while later, asking Colindres about denying the rape allegations. Colindres responded, "I kept telling them to call the cops if that's what [Hernandez] believed—call the cops." In using this statement as a measure of credibility, defense counsel put at issue whether the statement supported a determination that Colindres was credible. The prosecution simply

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)

presented a different perspective on evidence already in the record. Here, the evidence was not otherwise inaccessible. Defense counsel had already presented evidence to the jury that Colindres had repeatedly told Hernandez to call the police. The jury also heard that law enforcement was not informed until five days later, when Hernandez reported the incident. The jury could have easily made the connection that Colindres did not call the police. Colindres cannot establish that the prosecutor's passing reference to the idea that Colindres could have called the police himself had any practical and identifiable consequence at trial. Therefore, the prosecutor's comment did not constitute manifest constitutional error warranting review.

Ineffective Assistance of Counsel

Colindres argues that his counsel was ineffective in failing to request a limiting instruction following the use of impeachment evidence. We conclude that defense counsel was deficient in failing to request the instruction but that Colindres again failed to demonstrate prejudice.

We review ineffective assistance of counsel claims de novo. State v. Estes, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel. Estes, 188 Wn.2d at 457. To prevail on an ineffective assistance claim, the defendant must establish that (1) counsel's performance was deficient, and (2) that deficiency resulted in prejudice. State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). Performance is deficient if it falls "below an objective standard of reasonableness

based on consideration of all the circumstances." State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). To show prejudice, the appellant must show a " 'reasonable probability' " that but for the deficient performance, the outcome of the proceedings would have been different. State v. Jones, 183 Wn.2d 327, 339, 352 P.3d 776 (2015) (quoting Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "The admission of evidence which is merely cumulative is not prejudicial error." State v. Todd, 78 Wn.2d 362, 372, 474 P.2d 542 (1970). There is a strong presumption that representation was effective. State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). And "[w]hen counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." Kyllo, 166 Wn.2d at 863.

Colindres contends that counsel's performance was deficient in failing to request a limiting instruction after the prosecution used a prior inconsistent statement to impeach A.C. On direct examination, A.C. testified that she had seen her uncle's body moving up and down on N.C., but nothing more. Before trial, in an interview with a Child Forensic Investigator, A.C. voiced that she had seen her uncle remove clothing and "do his middle part in [N.C.'s] butt." When asked about the earlier interview at trial, A.C. could not remember what she had told the investigator. As a result, the prosecution introduced statements from the interview to impeach A.C. by prior inconsistent statement. Defense counsel did not request a curative instruction.

Failing to request a limiting instruction can be a strategic decision. Here, however, because the prior statement addressed a factual issue central to the

outcome of the case, defense counsel should have requested a limiting instruction so that the jury did not consider the statements as substantive evidence of guilt. Without a limiting instruction, the jury was free to use that statement as substantive evidence of guilt. There was no legitimate reason in this case for defense counsel not to request the instruction. Counsel fell below an objective standard of reasonableness.

Although counsel's performance was deficient, Colindres fails to demonstrate that deficiency caused prejudice. Colindres argues that the State relied on this evidence to establish penetration, a necessary element of the rape of a child charge, and that other testimony was insufficient to meet this element. But A.C.'s testimony was not the only evidence of penetration. N.C. also testified that Colindres vaginally raped her. And N.C.'s physical examination showed evidence of penetration. Even if the jury relied on A.C.'s interview as substantive evidence of guilt, such evidence was cumulative. There was sufficient evidence without the interview statements for the jury to find the element of penetration beyond a reasonable doubt. As a result, Colindres cannot establish that the lack of limiting instruction affected the outcome of trial. Colindres does not establish prejudice and therefore, counsel was not ineffective.

### Victim Penalty Assessment and DNA Fee

Colindres contends that the victim penalty assessment (VPA) should be stricken because he is indigent. He also asserts that the DNA[3] collection fee should be stricken. We remand for the court to strike the VPA and DNA

---

[3] Deoxyribonucleic acid.

14

collection fees from the judgment and sentence.

In July 2023, the legislature amended RCW 7.68.035 to prohibit the imposition of a victim penalty assessment if the court finds a defendant indigent at the time of sentencing. The legislature also eliminated DNA collection fees. Recently amended RCW 43.43.7541 provides that the court shall waive any DNA collection fee previously imposed upon a motion by the defendant. These amendments apply retroactively in this case because Colindres's appeal was pending when the amendments took effect. State v. Ellis, 27 Wn. App. 2d 1, 15, 530 P.3d 1048 (2023).

Here, neither party disputes that Colindres was indigent at sentencing[4] and that the VPA should be stricken. Likewise, although the statute technically requires Colindres to move for the court to strike the DNA fee, neither party disputes that the fee should be stricken.

We remand for the court to strike both the VPA and the DNA collection fee.

Community Custody Provisions for Drugs and Alcohol

Colindres asserts that the community custody requirement that he be available for drug and alcohol testing at the request of his community corrections officer (CCO) or treatment provider unconstitutionally invades his right to privacy. His conviction did not involve drug or alcohol use. We remand to strike the community custody conditions about drug and alcohol use.

---

[4] The trial court did not explicitly make a finding that Colindres was indigent at sentencing, it only noted that it would waive all non-mandatory fees.

Constitutional challenges to community custody may be raised for the first time on appeal. State v. Reedy, 26 Wn. App. 2d 379, 395, 527 P.3d 156, review denied, 1 Wn.3d 1029, 534 P.3d 798 (2023).

Generally, sentencing courts may impose and enforce crime-related prohibitions and affirmative conduct as a condition of community custody. State v. Martinez Platero, 17 Wn. App. 2d 716, 725-26, 487 P.3d 910 (2021). That said, there must be "a reasonable relationship between the condition and the defendant's behavior." Martinez Platero, 17 Wn. App. 2d at 726.

Here, the State concedes that there was no evidence at trial that alcohol or drug use contributed to Colindres's offense and therefore, that the community custody conditions related to drug and alcohol use are unsupported. We remand for the court to strike the community custody conditions concerning drug and alcohol use.

### *In Camera* Review

Colindres contends that this court should independently review documents that the trial court denied to compel production of to determine whether the court appropriately barred his access. Following an *in camera* review, we conclude that the trial court appropriately denied Colindres's motion to compel production.

"A defendant is entitled to appellate review of [an] *in camera* hearing." State v. Casal, 103 Wn.2d 812, 822-23, 699 P.2d 1234 (1985). Therefore, we performed an *in camera* review. Following that review, we conclude that the trial court appropriately denied Colindres's motion to compel production and that he was not inappropriately barred from accessing the documents at issue.

"It is within the trial court's discretion to deny a motion to compel discovery and we will not disrupt the ruling absent an abuse of discretion." State v. Johnson & Johnson, 27 Wn. App. 2d 646, 212, 536 P.3d 204 (2023), review denied, 2 Wn.3d 1019 (2024). A trial court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. State v. Lord, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007).

Generally, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject involved in the pending action." CR 26(b)(1). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Evidence may be privileged under both attorney-client privilege and the work product doctrine. Attorney-client privilege applies to communications and advice between an attorney and client and extends to documents that contain privileged communications. Soter v. Cowles Pub. Co., 162 Wn.2d 716, 745, 174 P.3d 60 (2007). Similarly, the work product doctrine protects documents and tangible things prepared in anticipation of litigation or for trial. CR 26(b)(4). Work product documents do not need to be prepared personally by counsel; they are privileged as long as they are prepared by or for the party in anticipation of litigation. Doehne v. EmpRes Healthcare Mgmt., LLC, 190 Wn. App. 274, 283-84, 360 P.3d 34 (2015).

Here, the trial court first concluded that the documents at issue were not relevant, stating "[n]o portion of the documents reviewed by this court appears to

pertain to the defendant's case or to his alleged victim." This was not an abuse of the trial court's discretion. As the documents do not address the defendant, the victim, or any facts relating to the case at hand, they do not serve to make the existence of any related fact more or less probable.

The trial court also concluded that the documents at issue were protected both by attorney-client privilege and the work product doctrine. The trial court did not abuse its discretion in concluding as such. The documents are privileged under attorney-client privilege because they were prepared at the request of general counsel to assist a health care provider in determining potential corporate liability in an unrelated case. The documents also constitute work product because they were prepared, at the direction of counsel, in anticipation of litigation. The fact that Colindres was not the intended opponent in that anticipated litigation does not mean that the documents are not work product.

The trial court appropriately denied Colindres's motion to compel production as the material was not relevant and was privileged. Colindres was appropriately barred from accessing the documents at issue.

### Cumulative Error

Colindres lastly argues that, even if a single error alone is not enough to warrant reversal, the combined effects of many errors denied him a fair trial under the cumulative error doctrine. We disagree.

The cumulative error doctrine applies when "several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390

18

(2000). "The test to determine whether cumulative errors require reversal of a defendant's conviction is whether the totality of the circumstances substantially prejudiced the defendant and denied him a fair trial." In re Pers. Restraint of Cross, 180 Wn.2d 664, 690, 327 P.3d 660 (2014) (abrogated on other grounds by State v. Gregory, 192 Wn.2d 1, 427 P.3d 621 (2018)). The defendant bears the burden of proving cumulative error. In re Pers. Restraint of Lord, 123 Wn.2d 296, 332, 868 P.2d 835 (1994).

Here, there are only two established trial errors. The first is the prosecutor's inappropriate behavior in cross-examining Caceres. The second is defense counsel's failure to request a limiting instruction. As discussed, neither error resulted in prejudice. Because reversal under the cumulative error doctrine requires circumstances that substantially prejudiced the defendant and Colindres has failed to show prejudice, reversal is not warranted.

We affirm Colindres's convictions but remand for the court to strike the victim penalty assessment, DNA collection fee, and community custody conditions.

_Smith, C.J._

WE CONCUR:

_Bowman, J_     _Hazelrigg, A.C.J_